No. 25-1013

# United States Court of Appeals for the Fourth Circuit

JESSICA WICKETT,

*Plaintiff-Appellee,*

*v.*

VENTURE GLOBAL LNG, INC., NOW KNOWN AS VENTURE GLOBAL HOLDINGS, INC.*

*Defendant-Appellant.*

On Appeal from the United States District Court for the Eastern District of Virginia, No. 1:24-cv-1869 (Brinkema, J.)

## OPENING BRIEF FOR DEFENDANT-APPELLANT

M. ELAINE HORN
AMY MASON SAHARIA
EMILY RENSHAW PISTILLI
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
(202) 434-5000
ehorn@wc.com

\* Appellee's complaint incorrectly identifies Venture Global Holdings, Inc. as the current name of Defendant Venture Global LNG, Inc. Rather, Venture Global, Inc., formerly known as Venture Global Holdings, Inc., is the parent company of Venture Global LNG, Inc.

## CORPORATE DISCLOSURE STATEMENT

Appellant Venture Global LNG, Inc. is a corporation wholly owned by Venture Global, Inc. (formerly known as Venture Global Holdings, Inc.).  Venture Global, Inc. is publicly traded as of January 27, 2025.  Except for Venture Global, Inc., no publicly traded entities have a direct financial interest in the outcome of this litigation.

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................1

JURISDICTIONAL STATEMENT ..................................................2

STATEMENT OF THE ISSUES ......................................................3

STATEMENT OF THE CASE .........................................................4

    A.    Factual Background ......................................................4

    B.    Procedural Background ................................................8

SUMMARY OF ARGUMENT .......................................................11

STANDARD OF REVIEW ............................................................13

ARGUMENT .................................................................................13

I.    THE DISTRICT COURT ERRED IN CONCLUDING THAT THE ARBITRATION AGREEMENT DOES NOT COVER WICKETT'S CLAIMS ...........................................................14

    A.    The Parties Clearly and Unmistakably Agreed that the Arbitrator Would Resolve Any Questions About the Arbitration Agreement's Scope ......................................14

    B.    Alternatively, Wickett's Claims Fall Under the RCA's Broad Arbitration Provision .............................................17

II.    WICKETT'S CHALLENGES TO THE ARBITRATION AGREEMENT'S ENFORCEABILITY FAIL......................................20

    A.    Wickett Received Stock Options as Consideration for the RCA ............................................................................22

    B.    The Parties' Mutual Promises To Submit Their Claims to Binding Arbitration Constitutes Consideration...........................22

    C.    Wickett's Continued At-Will Employment Constitutes Additional Consideration.................................................28

CONCLUSION................................................................................31

# TABLE OF AUTHORITIES

Page

## CASES

*Adkins v. Lab. Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002) ...............17, 19, 24, 26

*Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*,
96 F.3d 88 (4th Cir. 1996)...................................................................................17, 18

*Ampler Burgers Ohio LLC v. Bishop*, 902 S.E.2d 818 (W. Va. 2024).............24

*Archer W. Contractors, LLC v. Synalloy Fabrication, LLC*,
2016 WL 930965 (D. Md. Mar. 11, 2016) .........................................21

*Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017) ...........................16

*Black v. Powers*, 628 S.E.2d 546 (Va. Ct. App. 2006)........................................21

*Blanton v. Domino's Pizza Franchising LLC*,
962 F.3d 842 (6th Cir. 2020)................................................................16

*Bradford v. Rockwell Semiconductor Sys., Inc.*,
238 F.3d 549 (4th Cir. 2001)................................................................27

*Brown v. Coleman Co.*, 220 F.3d 1180 (10th Cir. 2000) ....................................18

*Bryce v. SP Plus Corp.*, 741 F. Supp. 3d 385 (E.D. Va. 2024) .........................23

*Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656 (Md. 2003).........25

*Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*,
252 F.3d 707 (4th Cir. 2001)................................................................32

*Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*,
807 F.3d 553 (4th Cir. 2015)................................................................18

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) (per curiam)....................18

*Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023) ......................................................2

*Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024)...............................................13, 14

*Donofrio v. Peninsula Healthcare Servs., LLC*,
2022 WL 1054969 (Del. Super. Ct. Apr. 8, 2022)...................................23, 26

*Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*,
940 A.2d 996 (D.C. 2008) ....................................................................23

*Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540 (4th Cir. 2005) .............................20

*Holloman v. Cir. City Stores, Inc.*, 894 A.2d 547 (Md. 2006) .........................24

*Jacobson v. Jacobson*, 277 A.2d 280 (D.C. 1971) ...............................................23

*Johnson v. Cir. City Stores*, 148 F.3d 373 (4th Cir. 1998)........................24, 25

*Kauffman v. Int'l Bhd. of Teamsters*, 950 A.2d 44 (D.C. 2008)............28, 30, 31

*Levin v. Alms & Assocs., Inc.*, 634 F.3d 260 (4th Cir. 2011)............................18

*Mey v. DIRECTV, LLC*, 971 F.3d 284 (4th Cir. 2020) ...............................13, 14

iii

Page

Cases—cont'd:

*Modern Perfection, LLC v. Bank of Am., N.A.*,
126 F.4th 235 (4th Cir. 2025) ..........................................14, 15, 16, 32
*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)...........................................................................13, 17, 20
*Nat'l Rifle Ass'n v. Ailes*, 428 A.2d 816 (D.C. 1981) .............................30
*Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34 (5th Cir. 1990)...........19
*O'Neil v. Hilton Head Hosp.*, 115 F.3d 272 (4th Cir. 1997) ........................24, 25
*Paramount Termite Control Co. v. Rector*, 380 S.E.2d 922 (Va. 1989).....28, 31
*Patrick v. Running Warehouse, LLC*, 93 F.4th 468 (9th Cir. 2024)...............16
*Price v. Taylor*, 466 S.E.2d 87 (Va. 1996)..................................................23
*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) ..........18
*Qorvis Commc'ns., LLC v. Wilson*, 549 F.3d 303 (4th Cir. 2008) ...................25
*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010) ...................................13, 14
*Rota-McLarty v. Santander Consumer USA, Inc.*,
700 F.3d 690 (4th Cir. 2012)...........................................................18
*Rsch. & Trading Corp. v. Pfuhl*,
1992 WL 345465 (Del. Ch. Ct. Nov. 18, 1992)................................28
*Sapiro v. VeriSign*, 310 F. Supp. 2d 208 (D.D.C. 2004)....................................23
*Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*,
377 F.3d 408 (4th Cir. 2004)...........................................................21
*Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522 (4th Cir.
2017) ...................................................................................................15, 16
*Smith v. Spizzirri*, 601 U.S. 472 (2024) .................................................32
*St. Aubin v. THI of S.C. at Camp Care, LLC*,
2023 WL 3614283 (S.C. Ct. App. May 24, 2023) (per curiam) ...................24
*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*,
386 F.3d 581 (4th Cir. 2004)...........................................................21
*Work v. Intertek Res. Sols., Inc.*, 102 F.4th 769 (5th Cir. 2024) .......................16
*World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co.*,
783 F.3d 507 (4th Cir. 2015)...........................................................21

Page

## STATUTES AND RULES

9 U.S.C
    § 2................................................................................................13
    § 4................................................................................................32
    § 16............................................................................................2, 11
  28 U.S.C. § 1332 ..............................................................................3
  Fed. R. Civ. P. 12 ..........................................................................32

## OTHER AUTHORITIES

1 Arthur Linton Corbin, *Corbin on Contracts* § 142 (1963).............................23
JAMS Emp. Arbs. & Arb. Servs., Employment Arbitration Rules &
    Procs. (2021), https://www.jamsadr.com/rules-employment-
    arbitration/english
    R. 11 .......................................................................................7, 15
    R. 31 ........................................................................................27
JAMS Pol'y on Emp. Arb. Minimum Standards of Procedural
    Fairness, Pt. B, Standard No. 6 (2009),
    https://www.jamsadr.com/employment-minimum-standards/...................27
Restatement of Employment Law § 8.06 cmt. e (2015)....................................28

## INTRODUCTION

Plaintiff-Appellee Jessica Wickett is a former employee of Defendant-Appellant Venture Global LNG, Inc. While Wickett worked for Venture Global, she signed a Restrictive Covenant Agreement (RCA), in which both she and Venture Global agreed to arbitrate cases like this one. Despite that promise, Wickett filed this lawsuit, alleging that Venture Global violated state law by declining her request to exercise certain stock options. Citing the arbitration agreement, Venture Global moved to compel arbitration. The district court denied that motion, concluding the agreement does not apply to Wickett's claims.

That was error. The arbitration agreement explicitly states that it is governed by JAMS arbitration rules. And under those rules, the *arbitrator*—not the court—resolves threshold disputes about an arbitration agreement's scope. For that reason, as this Court has already held, the district court could not construe the arbitration agreement, as the agreement clearly and unmistakably delegated that task to the arbitrator.

Alternatively, even if the district court were permitted to decide the arbitrability question itself, the court erred in concluding that the arbitration agreement does not cover Wickett's claims. The agreement broadly applies to

disputes "arising under *or in connection with*" the RCA. That expansive construction easily covers Wickett's claims, which all center around stock options expressly referenced in the RCA and that were contingent on execution of the RCA.

Notably, Wickett did not even dispute in the district court that the arbitration agreement clearly and unmistakably delegated scope questions to the arbitrator for decision. Instead, Wickett primarily argued that the arbitration agreement is unenforceable for lack of consideration. She is wrong. As explained below, the arbitration agreement is supported by at least three forms of independently adequate consideration: (1) stock options Wickett expressly acknowledged she received as consideration for executing the RCA, (2) the parties' mutual agreement to submit their claims to binding arbitration, and (3) Wickett's continued at-will employment at Venture Global.

This Court should reverse with instructions to compel arbitration and dismiss the action.

## JURISDICTIONAL STATEMENT

This Court has appellate jurisdiction pursuant to 9 U.S.C. § 16(a). *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023) ("When a federal district court denies a motion to compel arbitration, the losing party has a statutory

2

right to an interlocutory appeal.").  On December 19, 2024, the district court

denied Venture Global's motion to compel arbitration and dismiss or stay the

case.[1]  JA151.  Venture Global timely filed its notice of appeal that same day.

JA152.

Wickett invoked diversity jurisdiction pursuant to 28 U.S.C. § 1332 in

her complaint.  *See* JA11.  Although Venture Global moved to dismiss for lack

of subject-matter jurisdiction, the district court denied that motion, thereby

concluding it had diversity jurisdiction on the record before it.  JA151.

## STATEMENT OF THE ISSUES

I.     Whether the district court erred by denying Venture Global's mo-

tion to compel arbitration where (A) the parties' arbitration agreement

expressly incorporates JAMS arbitration rules that require the arbitrator to

resolve questions about the arbitration agreement's scope in the first instance,

and (B) the arbitration agreement broadly applies to "[a]ny dispute or contro-

versy arising under or in connection with" the RCA.

II.     Whether the arbitration agreement is supported by adequate con-

sideration.

---

[1] The district court granted in part and denied in part Venture Global's motion
to dismiss for failure to state a claim.  JA151.  That decision is not on appeal.

## STATEMENT OF THE CASE

### A.      **Factual Background**[2]

1.      Venture Global supplies liquefied natural gas to help the world meet its growing demand for North American energy.  JA6-7.  Venture Global was founded in 2013 as a privately held start-up.  At all times relevant to this appeal, none of its stock was traded on any public market.

Venture Global hired Wickett in 2014.  JA7.  Her employment was always at-will.  *See* JA17-18.

Wickett has never owned any Venture Global stock.  She did however, receive stock *options* while she worked at Venture Global.  She received three allotments of 50 stock options pursuant to Award Agreements issued in 2014, 2017, and 2018.[3]  JA7-8.  These options were all awarded pursuant to Award Agreements issued under Venture Global's 2014 Stock Option Plan.  *See* JA45-64.

---

[2] The following Factual Background is based on Wickett's complaint and documents attached to the complaint or incorporated into it by reference.

[3] Wickett alleges that the options awarded under the 2017 Award Agreement were actually awarded to her in 2016.  She bases that claim on an undated, cryptic handwritten note she allegedly took after a December 2016 meeting with Venture Global's then-Chief Financial Officer.  *See* JA12, JA36-37.  However, the only document formally memorializing an award of options is the Award Agreement executed in June 2017.  *See* JA56-57.

4

The Plan sets forth the Compensation Committee's powers and authority regarding individual Award Agreements. *See* JA110-112. It also mandates that every stock option "Award granted pursuant to the Plan shall be evidenced by an Award Agreement." JA115. The Award Agreements and the Plan set forth terms and conditions that governed Wickett's ability to exercise the options. For instance, each Award Agreement lists a "strike price" she had to pay to purchase shares. *See* JA46, JA49, JA56, JA59. The Award Agreements also contained certain restrictions that applied so long as Venture Global's stock was not publicly traded. As relevant here, Wickett's Award Agreements required that, before an initial public offering, she request and receive consent from Venture Global's "Compensation Committee" in order to exercise any options. JA48, JA58. In short, Wickett's right to exercise her stock options was not automatic.

2.    In 2017, "[t]o protect [its] confidential and proprietary materials, goodwill, trade secrets, relationships, competitive position, and related interests," Venture Global asked its at-will employees—including Wickett—to enter a Restrictive Covenant Agreement (RCA). JA66. Wickett signed the RCA on June 16, 2017. JA73. She "expressly acknowledge[d]" in the RCA

5

that she received "good and valuable consideration" for executing it, including "stock options granted to" her "as of the [RCA's] Effective Date." JA66.

That same day, Wickett also executed an Award Agreement for 50 stock options. That Agreement stated: "This Option is expressly made contingent on [Wickett's] agreement to and execution of the Restrictive Covenant Agreement . . . and this Option shall be void unless such Restrictive Covenant Agreement . . . is executed by [Wickett] . . . ." JA56. Venture Global countersigned both the RCA and the Award Agreement four days later, on June 20, 2017. JA57, JA73. The RCA's effective date and the Award Agreement's grant date are both June 12, 2017. JA56, JA66.

The RCA includes numerous covenants and commitments. Wickett promised, among other things, to protect Venture Global's confidential information and to avoid defaming or disparaging it. *See* JA66, JA68-69. If she violated these provisions, Venture Global had the right to cause the forfeiture of "any outstanding Company stock option." JA69.

Wickett and Venture Global also mutually agreed to resolve "[a]ny dispute or controversy arising under or in connection with" the RCA exclusively through binding JAMS arbitration:

> (b) <u>Arbitration</u>. Any dispute or controversy arising under or in connection with this Agreement shall be settled exclusively by

6

> arbitration conducted in the Wilmington, Delaware by a single ar-
> bitrator. The arbitration shall be administered by the JAMS
> dispute resolution service pursuant to its rules for resolving em-
> ployment disputes in effect at the time of submission to
> arbitration. Judgment may be entered on the arbitrator's award
> in any court having jurisdiction. . . . The Company and Employee
> hereby agree that a judgment upon an award rendered by the ar-
> bitrators may be enforced in other jurisdictions by suit on the
> judgment or in any other manner provided by law.

JA72. The parties likewise waived their jury trial rights. JA71.

The arbitration provision specifies that JAMS employment rules gov-

ern. JA72. Under those rules, "[j]urisdictional and *arbitrability* disputes,

including disputes over the formation, existence, validity, interpretation[,] or

*scope* of the agreement under which Arbitration is sought . . . shall be submit-

ted to and ruled on by *the Arbitrator*."[4]

After Wickett entered the RCA in June 2017, she continued to work as

an at-will Venture Global employee for more than seven years. *See* JA7-9.

In September 2024, and in accordance with the agreements she had

signed, Wickett requested consent from Venture Global's Compensation Com-

mittee to exercise 50 of her stock options. JA39-40, JA42. The Compensation

---

[4] JAMS Emp. Arbs. & Arb. Servs., Employment Arbitration Rules & Procs.,
R. 11(b) (2021) (JAMS R.), (emphases added), https://www.jamsadr.com/rules-
employment-arbitration/english.

Committee declined to grant consent, as allowed under the Award Agreement. JA44. Because it recognized that the ten-year term of some of Wickett's options would expire soon, Venture Global tried to resolve her concerns amicably. JA92. Those attempts were unsuccessful. Venture Global later terminated Wickett's employment. JA9.

Wickett continued to demand that the Compensation Committee consent to her exercise request. JA93. She threatened to sue. JA93. In response, Venture Global reminded her of the RCA's mutual arbitration agreement. JA92.

### B.    Procedural Background

Wickett filed this lawsuit in the U.S. District Court for the Eastern District of Virginia, demanding a jury trial. JA32.

Wickett's complaint asserts four causes of action. Counts I and II allege that Venture Global breached the Award Agreements and the implied covenant of good faith and fair dealing by declining her request for consent to exercise the stock options. JA20-27. Count IV asserts that Venture Global's failure to grant her exercise request violates Virginia's Wage Payment Act. JA30-31. And Count III accuses Venture Global of wrongfully terminating

Wickett in retaliation for complaining about the Compensation Committee's refusal to grant consent. JA27-30.[5]

The complaint discloses confidential information about a Venture Global investor. *See* JA12; *see also* JA66. And it defames and disparages Venture Global and its officers. *See* JA10, JA15, JA24-25. Venture Global thus filed a demand for JAMS arbitration against Wickett, asserting that the complaint breaches the RCA's confidentiality and non-disparagement clauses. *See* JA97-99.

After Wickett filed her complaint in the district court, Venture Global moved to compel arbitration based on the RCA's arbitration provision. *See* JA3.[6] Venture Global explained that the RCA's arbitration agreement required that Wickett bring her claims in arbitration because the agreement clearly and unmistakably delegated threshold disputes about its scope to the arbitrator by expressly incorporating JAMS rules and, alternatively, because the RCA's broad arbitration provision covered Wickett's claims. *See* JA81-83.

---

[5] The district court dismissed Count III for failure to state a claim. *See* JA151.

[6] Venture Global also moved to dismiss Wickett's action for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. *See* JA3.

In her opposition, Wickett did not dispute that the parties clearly and unmistakably delegated to the arbitrator disputes about the arbitration agreement's scope. She simply asserted, in a single paragraph, that her claims "do not fall within the scope of the arbitration provision." JA136. Most of Wickett's opposition focused on the distinct argument that the RCA and its arbitration agreement (including the delegation clause) are not supported by consideration. *See* JA131-136.

The district court denied the motion orally at a December 2024 hearing. The court's comments focused on the arbitration agreement's scope. The court did not address whether the parties had clearly and unmistakably delegated arbitrability questions to the arbitrator. Instead, the court concluded that the "scope of the arbitration [agreement in the RCA] has to do specifically with the non-compete and that sort of stuff, and it doesn't have anything to do with the stock options" at issue in Wickett's case. JA164. The court also commented that "the issue about consideration is very, very thin." JA164. The court later issued a brief order denying Venture Global's motion to compel arbitration. JA151.

10

That same day, Venture Global timely filed its notice of appeal. JA152-153. Pursuant to 9 U.S.C. § 16(a), the district court action has been stayed pending this appeal. JA176.

## SUMMARY OF ARGUMENT

The district court erred by denying Venture Global's motion to compel arbitration.

I.    Wickett's claims belong in arbitration. The court erred by assessing whether Wickett's claims are arbitrable, rather than referring that arbitrability question to an arbitrator. As this Court has held, agreements expressly incorporating JAMS rules clearly and unmistakably delegate gateway questions about an arbitration agreement's scope to the arbitrator alone. That clear and unmistakable delegation prohibited the court from construing the arbitration agreement.

Alternatively, the district court's construction of the arbitration agreement was erroneous. The agreement broadly applies to disputes "arising under or in connection with" the RCA. Wickett's claims—which all revolve around stock options explicitly referenced in the RCA and which were contingent on execution of the RCA—easily fall under this expansive umbrella.

11

II.     Wickett primarily argued before the district court that the agreement was unenforceable for lack of consideration.  She is wrong.  For starters, Wickett expressly acknowledged that she received stock options in exchange for executing the RCA.  The receipt of stock options plainly constitutes consideration supporting the arbitration agreement.

Further, the parties' mutual agreement to submit to binding arbitration confers sufficient consideration to enforce it.  Both Wickett and Venture Global promised to be *bound* by any arbitration result, they acknowledged that any arbitration award would be *enforceable* in courts of competent jurisdiction, and they agreed to arbitrate *both sides'* claims.  As this Court has repeatedly recognized, these mutual promises and commitments constitute more than enough consideration for an agreement to arbitrate.

Finally, the fact of Wickett's continued at-will employment at Venture Global confers yet more consideration.  By executing the RCA and then working at Venture Global for seven more years, Wickett accepted the modified employment terms outlined in the RCA, including those in the arbitration agreement.  This continued employment creates consideration where, as here, the employment relationship was at-will.

12

## STANDARD OF REVIEW

This Court "review[s] a district court's denial of a motion to compel arbitration de novo." *Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020).

## ARGUMENT

The Federal Arbitration Act (FAA) broadly mandates that a written arbitration agreement in a "contract . . . involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2. The Act was designed to put "arbitration agreements on an equal footing with other contracts." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). It codifies a "declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). And it "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24-25.

These principles necessitate arbitration here. By executing the RCA and incorporating JAMS rules, Wickett and Venture Global clearly and unmistakably agreed that the arbitrator would resolve any and all threshold arbitrability disputes. The RCA's broad arbitration clause easily encompasses

13

all of Wickett's causes of action.  And her attacks on the arbitration agree-

ment's enforceability are unavailing.

## I.  THE DISTRICT COURT ERRED IN CONCLUDING THAT THE ARBITRATION AGREEMENT DOES NOT COVER WICKETT'S CLAIMS

### A.  The Parties Clearly and Unmistakably Agreed that the Arbitrator Would Resolve Any Questions About the Arbitration Agreement's Scope

Wickett and Venture Global clearly and unmistakably delegated thresh-

old disputes about the arbitration agreement's scope to the arbitrator.  The

district court thus erred by assessing whether the RCA's arbitration clause

covers Wickett's claims.

"Arbitration is a matter of contract."  *Mey*, 971 F.3d at 288.  Parties to

that contract "can form multiple levels of agreements concerning arbitration."

*Coinbase*, 602 U.S. at 148.  They can agree, for instance, to send a dispute's

merits to the arbitrator.  *Id.*  They also "'can agree to arbitrate gateway ques-

tions of arbitrability,' including 'whether their agreement to arbitrate covers

a particular controversy.'"  *Modern Perfection, LLC v. Bank of Am., N.A.*, 126

F.4th 235, 241 (4th Cir. 2025) (alterations adopted) (quoting *Rent-A-Ctr.*, 561

U.S. at 68-69).  A court assesses, as a threshold matter, whether the parties

have delegated an arbitrability issue to the arbitrator.  *See id.*  The "court *may*

14

*not* decide an arbitrability question that the parties have" clearly and unmistakably delegated to the arbitrator, even if the court thinks the arbitrability argument "is wholly groundless." *Id.* (emphasis added) (citation omitted).

Venture Global stressed in its briefs and during oral argument that the parties had clearly and unmistakably delegated disputes about the arbitration agreement's scope to the arbitrator. *See* JA80-83, JA145-146, JA163-164. That means the district court had to *start* by assessing "*who* decides" this arbitrability issue. *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 526 (4th Cir. 2017), *abrogated on other grounds by Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019).

The court skipped that critical first step. Without addressing this issue, the court concluded that the provision does not cover Wickett's claims. *See* JA164.

By jumping the gate, the court overlooked clear and unmistakable evidence that the parties delegated the arbitrability dispute to the arbitrator by explicitly incorporating JAMS arbitration rules. Under those rules, "arbitrability disputes, including disputes over the . . . *scope* of the agreement under which Arbitration is sought, . . . *shall* be submitted to and ruled on by *the Arbitrator*." JAMS R. 11(b) (emphases added). The RCA's unambiguous text

accordingly precludes the district court from even assessing the arbitration agreement's scope. *See Modern Perfection*, 126 F.4th at 241.

An avalanche of precedent supports this result. For starters, this Court has already held that "the explicit incorporation of JAMS Rules serves as 'clear and unmistakable' evidence of the parties' intent to arbitrate arbitrability." *Simply Wireless*, 877 F.3d at 528. Other circuits agree. *See, e.g.*, *Work v. Intertek Res. Sols., Inc.*, 102 F.4th 769, 772 (5th Cir. 2024); *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017). And every circuit that has confronted this question—11 out of 13—agrees that expressly incorporated JAMS or "substantively identical" American Arbitration Association rules clearly and unmistakably delegate arbitrability to the arbitrator. *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) (citing cases from each circuit).

By expressly incorporating JAMS rules into the arbitration agreement, the parties clearly and unmistakably delegated gateway arbitrability questions about the agreement's scope to the arbitrator. The district court therefore erred by evaluating whether the agreement applies to Wickett's claims.

16

**B.    Alternatively, Wickett's Claims Fall Under the RCA's Broad Arbitration Provision**

Alternatively, even if the parties had not clearly and unmistakably delegated disputes about the arbitration agreement's scope to the arbitrator, the district court still would have been required to compel Wickett's claims to arbitration because the arbitration agreement covers the claims.

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25.  In other words, "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," the court *must* compel arbitration.  *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted).  Thus, as the party seeking to compel arbitration under the FAA, Venture Global must show simply that a written agreement to arbitrate "purports to cover the [parties'] dispute." *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002).[7]

---

[7] Venture Global must also show that the arbitration agreement relates to interstate commerce, and that the plaintiff has refused to arbitrate. *See Adkins*, 303 F.3d at 501.  These proceedings demonstrate Wickett's refusal to arbitrate.  And she has never disputed that the RCA involves interstate commerce.  Nor could she:  the "aggregate . . . economic activity" of the RCA and at-issue stock options "represent 'a general practice subject to federal control,'" which

17

This presumption in favor of arbitrability is "particularly applicable" here, as "the arbitration clause is broadly worded." *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 267 (4th Cir. 2011). The agreement expansively encompasses "*[a]ny* dispute or controversy *arising under or in connection with*" the RCA. JA72 (emphases added). This "is the very definition of a broad arbitration clause"—it applies to both disputes arising under the RCA and "even those issues with *any connection* to the contract." *Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (emphasis added); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (describing as "broad" an arbitration agreement covering "any controversy or claim arising out of or relating to this Agreement"); *Am. Recovery Corp.*, 96 F.3d at 93 (similar); *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015) (similar).

Under this framework, Wickett's claims clearly "aris[e] under or in connection with" the RCA. JA72. Her claims center around stock options she received from Venture Global and the Compensation Committee's decision to

---

is all federal law requires. *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 698 (4th Cir. 2012) (alteration omitted) (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) (per curiam) (alteration omitted)).

decline consent to her request to exercise those options. *See* JA20-31. Wickett conceded before the district court that her claims specifically relate to stock options governed by the Plan. JA136.

The RCA explicitly refers to the stock options contracts. On the RCA's first page, Wickett "expressly acknowledge[d]" that stock options granted to her under the Plan were "good and valuable consideration." JA66. The RCA further dictates that Venture Global has the right to cause the forfeiture of "any outstanding Company *stock option*" if Wickett breaches the RCA. JA69 (emphasis added). Moreover, the Award Agreement and the RCA were executed on the same day, and the Award Agreement was expressly contingent on Wickett's executing the RCA. *Compare* JA56-57, *with* JA73; *see also Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37-38 (5th Cir. 1990) ("Under general principles of contract law, separate agreements executed contemporaneously by the same parties, for the same purposes, and as part of the same transaction, are to be construed together."). The stock options—and the agreements governing them—are thus inexorably intertwined with the RCA's covenants, so her claims arise under and are connected to the RCA.

At a minimum, the arbitration agreement "purports to cover the dispute." *Adkins*, 303 F.3d at 501. The liberal federal policy in favor of

arbitration requires no more. *Moses H. Cone*, 460 U.S. at 24-25. Accordingly, the district court erred by concluding that Wickett's claims do not fall under the RCA's broad arbitration agreement.

## II. WICKETT'S CHALLENGES TO THE ARBITRATION AGREE-MENT'S ENFORCEABILITY FAIL

Before the district court, Wickett primarily argued that the arbitration agreement is unenforceable for lack of consideration. She is wrong. Venture Global provided three forms of consideration in exchange for her promise to arbitrate and the other promises in the RCA.

State law applies to questions of contract formation, such as the existence of consideration. *See Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005). In the district court, the parties disputed which state law governs the consideration question. Venture Global argued for District of Columbia law because the RCA was formed in the District of Columbia, *see* JA140-141, while Wickett asserted that Delaware law controls based on a Delaware choice-of-law clause in the RCA, *see* JA72, JA127, JA130.

This Court need not resolve that dispute. As explained below, District of Columbia law, Delaware law, and the law of the forum state, Virginia, are materially indistinguishable in all relevant respects. Because the arbitration agreement is supported by consideration in all relevant jurisdictions, "there is

20

no real conflict" that the Court needs to resolve. *World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co.*, 783 F.3d 507, 514-15 (4th Cir. 2015) (citation omitted).

If the Court concludes that there is a conflict, then District of Columbia law governs. Virginia's choice-of-law rules apply in this diversity case. *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599-600 (4th Cir. 2004). Under those rules, "everything relating to the *making* of the contract is to be governed by the law of the place where it was made." *Black v. Powers*, 628 S.E.2d 546, 554 & n.8 (Va. Ct. App. 2006) (alteration adopted) (citations omitted). And since "a contract is made when the last act to complete it is performed," the RCA was formed when Venture Global signed it in June 2017, while headquartered in the District. *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 419 (4th Cir. 2004); *see also* JA73, JA150.[8]

---

[8] Although the RCA contains a Delaware choice-of-law provision, that "provision is not . . . applicable to the question of whether a contract was formed, as application of the provision presupposes an enforceable contract." *Archer W. Contractors, LLC v. Synalloy Fabrication, LLC*, 2016 WL 930965, at *4 (D. Md. Mar. 11, 2016).

Under any relevant forum's law, the RCA was supported by three forms of consideration: (1) stock options, (2) the parties' mutual promises to arbitrate, and (3) Wickett's continued at-will employment.

## A. Wickett Received Stock Options as Consideration for the RCA

Documents Wickett attached to her complaint show she received stock options as consideration for entering the RCA. As noted above, Wickett signed the RCA on June 16, 2017—the same day she signed an Award Agreement granting her 50 stock options. *Compare* JA57, *with* JA73. The RCA's effective date is the same as the Award Agreement's grant date: June 12, 2017. *Compare* JA56, *with* JA66.

Wickett herself recognized that the agreement is supported by adequate consideration. She "expressly acknowledge[d]" in the RCA that the stock options served as "good and valuable consideration," JA66, that her receipt of the options was "contingent on [her] execution of" the RCA JA66, and that Venture Global could cause the forfeiture of her outstanding options if she breached the RCA's restrictive covenants, JA69.

## B. The Parties' Mutual Promises To Submit Their Claims to Binding Arbitration Constitutes Consideration

Both Wickett and Venture Global mutually agreed to arbitrate claims "arising under or in connection with" the RCA, and they acknowledged they

would be bound by the results of any arbitration. These mutual promises confer adequate consideration to enforce the arbitration agreement. Nothing more is required.

"A promise is a sufficient consideration for a return promise. This has been true for at least four centuries, ever since bilateral contracts were recognized." *Jacobson v. Jacobson*, 277 A.2d 280, 282 (D.C. 1971) (quoting 1 Arthur Linton Corbin, *Corbin on Contracts* § 142 (1963)); *see also Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1003 (D.C. 2008) ("An exchange of promises provides sufficient consideration, evidencing mutual obligation."); *Donofrio v. Peninsula Healthcare Servs., LLC*, 2022 WL 1054969, at *4 (Del. Super. Ct. Apr. 8, 2022) ("[T]he exchange of reciprocal promises constitutes consideration." (citations omitted)); *Price v. Taylor*, 466 S.E.2d 87, 88 (Va. 1996) ("[I]t is well established that mutual promises in a contract constitute valuable consideration.").

For that reason, courts routinely hold that "[m]utual agreements to arbitrate are independently sufficient forms of consideration." *Sapiro v. VeriSign*, 310 F. Supp. 2d 208, 214 (D.D.C. 2004); *Donofrio*, 2022 WL 1054969, at *4 (same); *Bryce v. SP Plus Corp.*, 741 F. Supp. 3d 385, 393 (E.D. Va. 2024)

23

(same).  This Court, applying analogous state law,[9] has likewise explained that "no consideration is required above and beyond the agreement to be bound by the arbitration process."  *Adkins*, 303 F.3d at 501 (West Virginia law) (alterations adopted) (quoting *Johnson v. Cir. City Stores*, 148 F.3d 373, 378 (4th Cir. 1998) (Maryland law)); *see also O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 274-75 (4th Cir. 1997) (South Carolina law).

A mutual agreement to arbitrate is enforceable where, as here, both sides "agreed to be bound by the arbitration process for the resolution of any claim required to be submitted to arbitration."  *Johnson*, 148 F.3d at 378.  In *Johnson*, an employee agreed to arbitrate "any legal dispute related to [her] application for employment or employment."  *Id.* at 374.  Nothing in the agreement required the employer's claims to be arbitrated.  *See id.*  Still, this Court held the agreement was supported by consideration because the employer

---

[9] *See Ampler Burgers Ohio LLC v. Bishop*, 902 S.E.2d 818, 826 (W. Va. 2024) ("We have said that a mutual agreement to arbitrate is sufficient consideration to support an arbitration agreement." (internal quotation marks omitted)); *Holloman v. Cir. City Stores, Inc.*, 894 A.2d 547, 553, 555-56 (Md. 2006) (mutual agreement to arbitrate was supported by consideration because "a binding promise may serve as consideration for another promise"); *St. Aubin v. THI of S.C. at Camp Care, LLC*, 2023 WL 3614283, at *1 (S.C. Ct. App. May 24, 2023) (per curiam) ("We further hold the Arbitration Agreement was supported by the valuable consideration of mutual promises . . . .").

could not "ignore the results of arbitration." *Id.* at 378 (citing *O'Neil*, 115 F.3d at 275).

The RCA's arbitration clause unambiguously satisfies this standard. By mandating that "[a]ny" covered dispute "shall be settled *exclusively* by [JAMS] arbitration," the agreement makes clear that all arbitration results are binding on *both* Wickett *and Venture Global*. JA72 (emphasis added); *see also Qorvis Commc'ns., LLC v. Wilson*, 549 F.3d 303, 308-09 (4th Cir. 2008) (an agreement requiring "all disputes" to be "*exclusive[ly]*" resolved through JAMS arbitration contemplated that "any award entered pursuant to the arbitration would therefore be final"). Plus, the agreement provides that Venture Global and Wickett agree that an arbitration judgment "may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law." JA72; *see also Qorvis*, 549 F.3d at 309 (explaining that language "explicitly anticipating *enforcement* of" an arbitration award "directly impl[ies] that a judgment on the award was contemplated"). And nothing in the RCA allows Venture Global unilaterally to modify the agreement's terms. *Cf. Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 662-63 (Md. 2003) (holding under Maryland law that an arbitration agreement allowing the

25

employer to modify or revoke the agreement at any time was not supported by consideration because the employer's promise was not binding).

Even though "no consideration is required above and beyond the agreement to be bound by the arbitration process," *Adkins*, 303 F.3d at 501 (alterations adopted), this arbitration agreement contains an additional promise: Venture Global agreed to submit *its own claims* to binding arbitration. *See* JA72 (specifying that "[a]ny dispute or controversy . . . shall be settled exclusively by" JAMS arbitration). That is why Venture Global filed a demand in JAMS arbitration—not a complaint in federal court—when Wickett breached the RCA. *See* JA97-99; *supra* p. 9. A company's "promise to arbitrate its own claims is *a fortiori* adequate consideration for th[e] agreement." *Adkins*, 303 F.3d at 501.[10]

---

[10] The arbitration agreement contains a small carveout that allows Venture Global to file claims under section 1(h)(i) of the agreement in court to limit the "irreparable injury and damage to" Venture Global caused by a breach of confidential information. *See* JA69, JA72. That changes nothing. Venture Global still promised otherwise to arbitrate "[a]ny dispute or controversy arising under or in connection with" the RCA, including this action. JA72. "[P]arties who agree to arbitrate may exclude certain claims . . . from the scope of the arbitration agreement" without making the agreement unenforceable, as "[m]utual promises do not require equal promises to constitute consideration." *Donofrio*, 2022 WL 1054969, at *5.

Wickett argued before the district court that the parties' mutual agreement to arbitrate could not confer adequate consideration because she received no "benefit" by executing the RCA and agreeing to arbitrate her claims. *See* JA162. But "[t]he benefits of arbitration are well-documented. For example, . . . the arbitration of disputes enables parties to avoid the costs associated with pursuing a judicial resolution of their grievances." *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 552 (4th Cir. 2001) (alteration and internal quotation marks omitted); *see also id.* ("[P]arties agree to arbitrate and trade the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." (internal quotation marks omitted)). And as the district court discussed, *see* JA158, the JAMS employment rules provide that "the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee," JAMS R. 31(c); *see also* JAMS Pol'y on Emp. Arb. Minimum Standards of Procedural Fairness, Pt. B, Standard No. 6 (2009) (all costs beyond the initial fee "must be borne by the company, including . . . all professional fees for the arbitrator's services"), https://www.jamsadr.com/employment-minimum-standards/.

Both sides mutually agreed to arbitrate claims arising under or in connection with the RCA, and they both promised to be bound by the results of

arbitration. These mutual commitments confer adequate consideration to support the arbitration agreement's enforceability.

### C. Wickett's Continued At-Will Employment Constitutes Additional Consideration

After executing the RCA, Wickett remained at Venture Global for more than seven years. *See* JA9, JA73. Venture Global's continued at-will employment of Wickett conferred further consideration for the RCA and the arbitration agreement within it.

In the District of Columbia, Delaware, and Virginia, "an employer may prospectively modify the terms of at-will employment[,] and . . . the employee's continued service amounts to acceptance of the modification." *Kauffman v. Int'l Bhd. of Teamsters*, 950 A.2d 44, 48 (D.C. 2008); *see also Rsch. & Trading Corp. v. Pfuhl*, 1992 WL 345465, at *9 (Del. Ch. Ct. Nov. 18, 1992) ("[T]he retention of an employee at will, in exchange for a covenant not to compete with the employer, constitutes consideration sufficient to support contractual obligations."); *Paramount Termite Control Co. v. Rector*, 380 S.E.2d 922, 926 (Va. 1989) (same), *overruled on other grounds by Home Paramount Pest Control Cos. v. Shaffer*, 718 S.E.2d 762 (Va. 2011). The Restatement recognizes this rule as the "majority rule." Restatement of

28

Employment Law § 8.06 cmt. e (2015) (discussing "[r]estrictive covenants agreed to after the start of the employment relationship").

This case cleanly fits this framework. The RCA unambiguously modified Wickett's employment terms. She expressly agreed, for example, "to treat all Confidential Information as strictly confidential" "during [her] term of employment" and to not disparage or defame Venture Global "during employment with the Company." JA66, JA68-69. She reviewed and signed these changed conditions while she was still an at-will employee. And she further manifested her assent to these modified conditions by working at Venture Global for another seven years without complaint. JA9. Wickett's continued work demonstrates that she accepted the revised employment terms in the RCA, including the parties' mutual agreement to arbitrate disputes "arising under or in connection with" it. JA72.

Wickett argued before the district court that her continued employment could not constitute adequate consideration because the RCA specifically disclaimed any *promise* of continued employment by stating that the agreement did not "modify the at-will status of [her] employment relationship." *See* JA18, JA72. Exactly. No future employment promise was required for Wickett's

29

continued employment to confer consideration *because she was an at-will employee.*

The D.C. Court of Appeals explained the point in *Kauffman*. There, Kauffman worked as an at-will employee for Teamsters. *Kauffman*, 950 A.2d at 46. When he took the job, he accepted a housing allowance as an employment condition. *Id.* Four years later, Teamsters revoked that allowance. *Id.* Even though Kauffman knew about the revocation, he continued to work as an at-will employee for another three years before he ultimately filed a lawsuit arguing that the revocation was unenforceable for lack of consideration. *Id.* at 46-47. Rejecting Kauffman's argument, the court explained that "once an [at-will] employee learns about a new employer policy . . . but elects to stay on the job and accept compensation, that decision is sufficient to imply an agreement to continue working subject to a new limitation." *Id.* at 47 (alteration adopted) (quoting *Nat'l Rifle Ass'n v. Ailes*, 428 A.2d 816, 820 (D.C. 1981)). The employee's acceptance of the new condition is supported by consideration because "neither party to at-will employment is bound to continue performance, and thus courts properly view future performance by each as valid consideration for the change in terms." *Id.* at 48 (citing cases).

30

*Kauffman* is on all fours with this case. Like Kauffman, Wickett was an at-will Venture Global employee, meaning she was not "bound to continue performance" by working there and Venture Global was not bound to continue employing her. *See Kauffman*, 950 A.2d at 47-48. And like Kauffman, Wickett continued working—for years—after Venture Global materially altered her employment conditions. That continued performance likewise implies that she agreed to work subject to the RCA's covenants, including the mutual arbitration agreement. *See id.*

Venture Global "could have terminated [Wickett] at its will after [she] signed the" RCA. *Paramount Termite Control*, 380 S.E.2d at 926. But it "continued to employ" her, and she continued to work subject to the RCA's new employment conditions. *Id.* Her ongoing employment "supplied the consideration for [her] promise[s]" in the RCA, including her agreement to submit this case to arbitration. *Id.* Accordingly, the arbitration agreement is supported by adequate consideration, and Wickett's challenges to its enforceability fail.

## CONCLUSION

The district court erred by denying Venture Global's motion to compel arbitration. This Court should accordingly reverse the district court's order

and remand the case with instructions to compel arbitration of Wickett's claims and dismiss this action. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.").[11]

Respectfully submitted,

/s/ *M. Elaine Horn*
M. ELAINE HORN
AMY MASON SAHARIA
EMILY RENSHAW PISTILLI
WILLIAMS & CONNOLLY LLP
 *680 Maine Avenue, S.W.*
 *Washington, DC 20024*
 *(202) 434-5000*
 *ehorn@wc.com*

*Counsel for Venture Global LNG, Inc.*

---

[11] The Supreme Court recently held that a court cannot dismiss a case instead of issuing a stay if a party has requested a stay under Section 3 of the FAA. *Smith v. Spizzirri*, 601 U.S. 472, 474 (2024). But because Venture Global only requests a stay in the alternative, the district court still may dismiss the case under Section 4 of the FAA and Rule 12 of the Federal Rules of Civil Procedure. *See Modern Perfection*, 126 F.4th at 243 (*Smith* does not require dismissal "when the appealing party never requests a stay").

## STATEMENT REGARDING ORAL ARGUMENT

Venture Global would welcome the opportunity to present argument to the Court.  Given the complex factual background, oral argument would be helpful to the disposition of this appeal.  *See* Fourth Cir. Local Rule 34(a).

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), that the attached Brief of Defendant-Appellant is proportionately spaced, has a typeface of 14 points or more, and contains 6,344 words.

*/s/ M. Elaine Horn*

M. ELAINE HORN

## CERTIFICATE OF SERVICE

On this 18th day of February, 2025, I electronically filed the foregoing using the Court's appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by that system.

/s/ *M. Elaine Horn*

M. ELAINE HORN