NO. 25-1013

# United States Court of Appeals

## *for the*

# Fourth Circuit

JESSICA WICKETT,

*Plaintiff-Appellee,*

– v. –

VENTURE GLOBAL LNG, INC., now known as Venture Global Holdings, Inc.,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

## BRIEF FOR PLAINTIFF-APPELLEE

GERRY SILVER
SULLIVAN & WORCESTER LLP
1251 Avenue of the Americas,
   19th Floor
New York, New York 10020
(212) 660-3096

MICHAEL T. DYSON
SULLIVAN & WORCESTER LLP
1666 K Street, NW
Washington, DC 20006
(202) 775-1217

*Attorneys for Plaintiff-Appellee*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................... iii

INTRODUCTION ........................................................................................... 1

STATEMENT OF THE ISSUES ..................................................................... 5

STATEMENT OF THE CASE ......................................................................... 5

I.    FACTUAL BACKGROUND ................................................................. 5

    A.    The Company Awards Wickett The 2014 Options And The
        2016 Options ................................................................................ 5

    B.    In June 2017, The Parties Sign the RCA .................................... 6

    C.    The Company Refuses To Allow Wickett To Exercise Her
        Options And Fires Her In Retaliation For Complaining About
        Not Receiving Her Shares ............................................................ 7

II.   PROCEDURAL BACKGROUND .......................................................... 8

    A.    Wickett Commences This Action Asserting Claims Arising Out
        Of The Company's Conduct Relating to the 2014 and 2016
        Option Agreements ....................................................................... 8

    B.    Judge Brinkema Correctly Denies The Motion to Compel
        Arbitration ................................................................................... 10

SUMMARY OF ARGUMENT ....................................................................... 11

ARGUMENT ................................................................................................... 13

I.    JUDGE BRINKEMA CORRECTLY RULED THAT THE RCA
    ARBITRATION PROVISION DOES NOT COVER THIS DISPUTE ....... 13

II.   JUDGE BRINKEMA CORRECTLY RULED THAT THE RCA
    AND ITS ARBITRATION PROVISION ARE UNENFORCEABLE
    FOR A LACK OF CONSIDERATION ....................................................... 19

    A.    Legal Standards ........................................................................... 19

i

  B. The RCA Is Unenforceable For A Lack Of Consideration.................20

III. IN THE ALTERNATIVE, THE DISRICT COURT ACTION
  SHOULD BE STAYED PENDING ARBITRATION .................................26

CONCLUSION .......................................................................................27

## <u>TABLE OF AUTHORITIES</u>

fPage

## CASES

*Adkins v. Labor Ready, Inc.*,
303 F.3d 496 (4th Cir. 2002) ...................................................18, 19, 23

*Bryce v. SP Plus Corp.*,
741 F.Supp.3d 385 (E.D. Va. 2024) ...................................................23

*Chemours Company v. DowDuPont Inc.*,
2020 WL 1527783 (Del. Ch. March 30, 2020) ...................................21

*Cigna Health and Life Insurance Company v. Audax Health Solutions, Inc.*,
107 A.3d 1082 (Del. Ch. Ct. 2014) ..................................19, 20, 23, 24

*Clay v. Chesapeake & Potomac Telephone Co.*,
184 F.2d 995 (D.C. 1950) ...................................................................20

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) ..................................................4, 12, 13, 14, 15

*Donofrio v. Peninsula Healthcare Servs., LLC*,
2022 WL 1054969 (Del. Super. Ct. April 8, 2022) ...........................23

*Evraz Stratcor, Inc. v. Kennametal Inc.*,
2016 WL 11483716 (W.D. Ark. March 8, 2016) ...............................17

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ............................................................................18

*Gibbs v. Haynes Investments, LLC*,
967 F.3d 332 (4th Cir. 2020) .........................................................4, 13

*Granite Rock Co. v. Int'l Bhd. Of Teamsters*,
561 U.S. 287 (2010) ............................................................................18

*James J. Gory Mech. Contracting, Inc. v. BPG Residential P'rs V, LLC*,
2011 WL 6935279 (Del. Ch. Dec. 30, 2011) .....................................19

*Johnson v. Continental Finance Company, LLC*,
2025 WL 758026 (4th Cir.  March 11, 2025) .....................................14

*Kauffman v. Int'l Bhd. Of Teamsters*,
   950 A.2d 44 (D.C. 2008) .................................................................25

*MacDonald v. CashCall, Inc.*,
   883 F.3d 220 (3d Cir. 2018) ...................................................... 13-14

*Matter of ITT Avis, Inc. v. Tuttle*,
   27 N.Y.2d 571 (1970)...................................................................17

*Modern Perfections, LLC v. Bank of America, N.A.*,
   126 F.4th 235 (4th Cir. 2025)....................................................14, 15

*Moscowitz v. Theory Ent. LLC*,
   2020 WL 6304899 (Del Ch. Oct. 28, 2020) ..................................21

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*,
   636 F.2d 51(3rd Cir.1980)............................................................20

*Paramount Termite Control Co., Inc. v. Rector*,
   238 Va. 171 (1989).......................................................................24

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967) ................................................................14, 18

*Reiver v. Murdoch & Walsh, P.A.*,
   625 F. Supp. 998 (D. Del. 1985) ..................................................24

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010) ................................................................13, 14

*Research & Trading Corp. v. Pfuhl*,
   1992 WL 345465 (Del. Ch. Ct. Nov. 18, 1992) ............................24

*Sabatoro Const. Co. v. Formoso Plastics Corp. USA*,
   1996 WL 453460 (Del. Super. June 10, 1996)...............................20

*Salsbery v. Verizon Wireless (VAW), LLC*,
   2014 WL 3876635 (S.D. W.Va. Aug. 7, 2014)...............................18

*Sapiro v. VeriSign*,
   310 F.Supp.2d 208 (D.D.C. 2004) ................................................23

iv

*Seiden v. Kaneko*,
    2015 WL 7289338 (Del. Ch. June 10, 2015) ....................................................20

*Simply Wireless, Inc. v. T-Mobile U.S., Inc.*,
    877 F.3d 522 (4th Cir. 2017) ............................................................15

*Smith v. Spizzirri*,
    601 U.S. 472 (2024) ........................................................................26

## STATUTES

9 U.S.C. § 3 ........................................................................................26

9 U.S.C. § 7 ........................................................................................26

9 U.S.C. § 9 ........................................................................................26

## OTHER AUTHORITIES

3 Williston on Contracts § 7:5 (4th ed.)....................................................20

Restatement (Second) of Contracts § 87 cmt. C (1981) ........................................21

## **INTRODUCTION**

Plaintiff-Appellee Jessica Wickett's claims against Defendant-Appellant Venture Global LNG, Inc. ("Venture Global or the "Company") should be decided in a public forum, before a Court, by a jury. Wickett never waived her rights to public court proceedings or a jury trial on her claims against the Company for violating her rights under stock option agreements; nor did she ever agree to put them to private arbitration.

The agreement the Company points to for an arbitration clause—which came long after the stock option agreements that form the basis of Wickett's claims—is unenforceable for lack of consideration. Moreover, by its terms, that arbitration clause does not cover Wickett's claims in this case. The District Court therefore correctly blocked the Company's attempt to force Wickett into private arbitration. Its denial of the Company's motion to compel arbitration should be affirmed, and Wickett's claims should proceed in the Court where she brought them.

The stock option agreements that form the basis of Wickett's claims date back to 2014 and 2016, and do not have arbitration clauses. Wickett joined the Company as its fourth employee in the Fall of 2014, when it was a mere start-up, and was awarded 50 ten-year Options at that time (the "2014 Options"; the "2014 Option Agreement" (JA12 (Complaint ¶¶22-23); JA34). Wickett was awarded another 50 ten-year Options in December 2016 (the "2016 Options"; the "2016 Option

Agreement" (JA12 (Complaint ¶¶ 24-25); JA36-37).

Over Wickett's ten years at the Company, the Company skyrocketed in value and is now worth over $20 billion (JA8 (Complaint ¶ 7) ($28 billion at current stock price). Yet when Wickett attempted to exercise her 2014 Options in September 2024 before they expired, the Company wrongfully claimed that the consent of the "Compensation Committee" (comprised solely of interested Co-Founders and Officers Michael Sabel ("Sabel") and Robert Pender ("Pender"), who collectively own over 85% of the Company – an over $17 billion stake) was required.

Messrs. Sabel and Pender then acted in bad faith and to enrich themselves personally in refusing to grant consent and to cause Wickett's 2014 Options to purportedly expire. When Wickett understandably complained about being deprived of her Shares after ten productive years at the Company, she was immediately fired for it. No reason was given for the refusal to allow Wickett to exercise or the sudden termination – because there is no good (or legal) reason. (*See generally* JA8-11 (Complaint ¶¶ 8-16)). Understandably, Wickett filed this action to vindicate her rights under the 2014 and 2016 stock option agreements.

Venture Global then moved, *inter alia*, to compel arbitration solely based on a Restrictive Covenant Agreement (the "RCA"; JA66-73), which was not executed until on or about June 12, 2017 (defined as the "Effective Date" (JA66)), nearly three years after Wickett joined Venture Global, and well after she had been granted the

2014 and 2016 Options. Wickett opposed the motion on the grounds that the RCA (including the arbitration and delegation provision therein) is unenforceable, and also because the limited arbitration provision in the RCA clearly did not cover this dispute. Judge Brinkema correctly denied the Company's motion.

In particular, the Company's specified "good and valuable consideration" for the RCA, namely "the Company stock options granted to Employee as of the Effective Date" (JA66) – *i.e.*, the 2014 Options and the 2016 Options – had been awarded to Wickett long before and were previously vesting, and therefore could not possibly constitute consideration (JA12 (Complaint ¶¶ 22-25); JA17-18 (Complaint ¶ 44)). Venture Global *knew* it needed to provide Wickett with consideration for the RCA to be enforceable, but instead of actually doing so, it *pretended* to do so by listing the Options Wickett already owned as the purported consideration (JA66). But it is black-letter law that consideration for a new agreement cannot be legal rights a party already has. Wickett did not receive any benefit she did not already own, and Venture Global did not suffer any detriment at Wickett's request, and therefore the RCA and the arbitration provision therein are equally unenforceable for a lack of consideration under governing Delaware law.

Further, the arbitration provision in the RCA is limited in that it only pertains to claims that "aris[e] under or in connection with this Agreement [the RCA]" (JA72). The RCA, as its name indicates, imposes restrictive covenants upon

3

Wickett, such as non-compete, non-solicit and confidentiality restrictions. However, these provisions are not at issue in this case. Rather, Wickett's claims in this action relate to the 2014 Options granted to her pursuant to the 2014 Option Agreement and the 2016 Options granted to her under the 2016 Option Agreement, both of which were governed by a separate 2014 Stock Option Plan, as amended, and none of which contain an arbitration provision (*see, e.g.*, JA20-21 (Complaint ¶¶ 51-60) and JA34, JA36-37 (Complaint Exs. A & B)). None of Wickett's claims "aris[e] under or in connection with this Agreement [the RCA]"(JA72), and therefore her claims in this action do not fall under its arbitration provision.

For all these reasons, Judge Brinkema correctly denied the Company's motion to compel arbitration. As Wickett equally challenged the enforceability of the RCA and the specific arbitration and delegation provisions therein, and also because this case involves multiple agreements (some without an arbitration provision), the issue of arbitrability was squarely before the District Court, and correctly was not put to an arbitrator. *See, e.g.*, *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151, 152 (2024); *see also* Point I(A), *infra*). Judge Brinkema correctly found (i) that the limited arbitration provision in the RCA does not cover the scope of this dispute, which arises solely out of separate, earlier stock option agreements that do not contain an arbitration provision; and (ii) that the RCA (including the arbitration provision) was unenforceable for a lack of consideration. It is respectfully submitted that Judge

4

Brinkema's Order should be affirmed, and this case should proceed in the District Court.

## STATEMENT OF THE ISSUES

I.    Where Wickett equally challenged the enforceability of the RCA and the arbitration provision therein, and where Wickett's claims arise solely out of separate stock option agreements that do not contain an arbitration provision, whether the District Court was correct to decide the arbitrability question and correctly conclude that Wickett's claims do not fall within the scope of the limited RCA arbitration provision, which only relates to claims that "aris[e] under or in connection with this Agreement [the RCA]".

II.    Whether the District Court correctly held, under the unique factual circumstances of this case, that the Restrictive Covenant Agreement as a whole and the arbitration and delegation provisions therein are unenforceable for a lack of consideration.

## STATEMENT OF THE CASE

## I.    FACTUAL BACKGROUND.

## A.    The Company Awards Wickett The 2014 Options And The 2016 Options.

In or about the Summer of 2014, Wickett began discussions with Sabel and Pender about the prospects of joining Venture Global (JA12; Complaint ¶ 22). Wickett knew Sabel and Pender through her now-husband, who had introduced

Sabel and Pender to each other (*id.*). Sabel and Pender offered Wickett the 2014 Options, and Wickett began working at the Company in September 2014 (*id.*). By letter dated October 2, 2014, Sabel and Pender confirmed that Wickett was awarded the 2014 Options, which began vesting on October 2, 2014 (JA12; Complaint ¶ 23). Over the next two years, Wickett worked diligently at the Company as they attempted to develop the Company's initial plant, the Calcasieu Pass Plant in Louisiana, so that it would eventually start generating liquified natural gas ("LNG"). (JA12; Complaint ¶ 24).

In late December 2016, Wickett participated in her annual compensation meeting with Graham McArthur ("McArthur"), then the Company's Chief Financial Officer (JA12, 36-37; Complaint ¶ 25 and Exhibit B thereto). McArthur informed Wickett of her salary for 2017 and that she had been granted the 2016 Options, which began vesting on January 1, 2017 (*id.*).

**B.     In June 2017, The Parties Sign the RCA.**

Approximately six months later, on or about June 12, 2017, the Company presented Wickett with the RCA for her signature (JA17; Complaint ¶ 44). No one at the Company told Wickett she had to sign it or she would be terminated. Nor did anyone tell Wickett that if she signed the RCA she could remain employed by the Company. The RCA was presented without any explanation. (JA18; Complaint ¶ 45). The RCA states that the specified "good and valuable consideration" for the

RCA is "the Company stock options granted to Employee as of the Effective Date [June 12, 2017]" (JA17 (Complaint ¶ 44) and JA66 (RCA p. 1)). However, the only Options granted to Wickett as of the Effective Date were the 2014 Options and the 2016 Options, which had been previously granted to her in or about October 2014 and December 2016, and had been vesting since October 2014 and January 2017, respectively. Hence, the Options could not possibly constitute consideration. (JA17-18; Complaint ¶ 44).

The RCA further states that it is not a promise of continued employment: "Nothing in this Agreement shall create any right to continued employment or in any way supersede, undermine or otherwise modify the at-will status of the employment relationship between the Company and Employee" (JA72 (RCA §14)). The RCA provides that it is governed by Delaware law (JA72 (RCA § 12(a))).

## C.  <u>The Company Refuses To Allow Wickett To Exercise Her Options And Fires Her In Retaliation For Complaining About Not Receiving Her Shares</u>.

By September 2024, Venture Global's stock was worth not less than $62,000 per share (JA13 (Complaint ¶ 28)). Hence, Wickett's 2014 Options alone are worth not less than $3 million (*id.*). As the 2014 Options were set to expire in October 2024, Wickett began taking steps to exercise them (JA13 (Complaint ¶ 29)).

As more fully set forth in the Complaint, Wickett first began discussing the matter with Keith Larson ("Larson"), the Company's General Counsel (*id.*). Larson

told Wickett that Sabel and Pender wanted her 2014 Options to expire and instead would offer to pay her $10,000 per Option (*id.*).  Wickett indicated to Larson that this was entirely unfair, as she believed that, after ten years at the Company, she should be allowed to exercise her Options and obtain Shares in the Company (*id.*).  She further complained that the Options were worth millions of dollars, and that $10,000 per Option was a lowball offer depriving her of the fair market value of the Shares, which constituted a major portion of her overall compensation (*id.*).

Wickett then sent letters to Sabel and Pender attempting to exercise her Options and complaining about any refusal to allow her to do so (JA13 (Complaint ¶ 30)).  For no stated reason whatsoever, Sabel and Pender refused to allow Wickett to exercise her Options, purportedly causing them to expire, and then immediately had her fired (JA14 (Complaint ¶ 31)).  No reason was given for the Company's termination of Wickett's employment after ten years, but the reason is obvious – she was fired for complaining about being deprived of valuable Shares in the Company.

## II.  **PROCEDURAL BACKGROUND.**

### A.  **Wickett Commences This Action Asserting Claims Arising Out Of The Company's Conduct Relating to the 2014 and 2016 Option Agreements.**

Shortly after the Company terminated her, Wickett brought this action in the District Court, demanding a jury trial on four causes of action (JA32).  *First*, Wickett alleges that Venture Global breached the 2014 and 2016 Option Agreements (Count I) by refusing Wickett's exercise of her Options, insisting that the consent of the

Compensation Committee was required. This was a breach because no such consent is required under those agreements. The subsequent agreement Venture Global relies upon for the purported consent requirement are void for a lack of consideration. Therefore, that agreement and all terms therein are unenforceable as a matter of law. (JA20-22 (Complaint ¶¶ 50-62)).

*Second*, Wickett alleges that, to the extent consent was required for the exercise of the Options, the Company breached the implied duty of good faith in denying that consent (Count II). Governing law is clear that there is an implied covenant of good faith in this Option exercise context, as it involves a future act of discretion, and the Company clearly breached that covenant. (JA22-27 (Complaint ¶¶ 63-86)). *Third*, Wickett alleges a claim under Virginia's wage protection laws that Wickett was denied Shares in Venture Global, which constitute "wages" and/or compensation for services performed under Virginia law (Count IV) (JA30-31; Complaint ¶¶ 101-107)).

*Fourth*, Wickett alleges a claim for wrongful termination and retaliation in violation of the Virginia Whistleblower statute. The Company fired Wickett for complaining about being denied or cheated out of lawful Wages, *i.e.*, the Shares, which is a violation of law. (Count III) (JA27-30 (Complaint ¶¶ 87-100)). Venture Global moved to compel arbitration of all of Wickett's claims, and to stay or dismiss the action (JA74). Venture Global also moved to dismiss the claims under Federal

Rule of Civil Procedure 12(b)(6), which Judge Brinkema granted as to the Whistleblower statute claim, but denied as to all other claims.

**B.    Judge Brinkema Correctly Denies The Motion to Compel Arbitration.**

Judge Brinkema correctly denied the Company's motion to compel arbitration in its entirety, on multiple grounds.

At the outset of her ruling, Judge Brinkema recognized that Wickett's claims arise out of the "first two stock option packages or agreements" that were entered into in "2014 and 2016," observing that "the two seminal documents that are at issue in this case are 2014 and 2016" (JA157:17-21).  Significantly, neither agreement contains an arbitration provision.

Next, Judge Brinkema recognized that there was an issue as to whether the RCA, the only agreement containing an arbitration provision, was unenforceable for a lack of consideration (JA158:3-5).  After hearing further argument on that point— which had been fully briefed the parties—Judge Brinkema stated that her reading of the arbitration provision in the RCA was that it did not pertain to the stock options: "Also, in my view as I read the document, I'm not sure that it would even apply to the issue about the stock options" (JA162:23-25) and "that's really the biggest problem" (JA163:1-3)).

Wickett's counsel followed up:  "[Y]es, [Wickett's Complaint] is outside the scope [of the arbitration provision].  It's a very specific arbitration provision, and it

only relates to disputes related to this restrictive covenant agreement, and that this stock [dispute] is totally different."  Judge Brinkema responded: "I think that is a strong argument." (JA163:4-10).

Venture Global's counsel argued that the Court should defer to the delegation clause in the arbitration provision in the RCA and let a JAMS arbitrator decide arbitrability (JA163:15-25).  Judge Brinkema correctly rejected that argument. As Wickett challenged the RCA and the arbitration and delegation provisions therein as being equally unenforceable for a lack of consideration, and because this dispute arises under the earlier, separate Stock Option Agreements that do not contain an arbitration clause, the issue of enforceability of the RCA and the arbitration/delegation provision in this multiple-agreement context was squarely before the District Court.   Judge Brinkema correctly ruled:   "I don't buy the argument, so I'm going to deny the motion to arbitrate.  I find, Number 1, the issue about consideration is very, very thin; Number 2, the way I read that document, the scope of the arbitration [provision] has to do specifically with the non-compete and that sort of stuff, and it doesn't have anything to do with the stock options.  So I'm denying the motion" (JA164:12-19).

## SUMMARY OF ARGUMENT

Judge Brinkema correctly denied the motion to compel arbitration.  Wickett's claims in this action arise out of earlier 2014 and 2016 Stock Option Agreements

that do not contain arbitration clauses. Further, the limited arbitration provision in the RCA does not cover this dispute. As Wickett challenged the RCA, and the arbitration and delegation provisions therein, as being equally unenforceable for a lack of consideration, the issue of enforceability of the RCA and the arbitration/delegation provision in this multiple-agreement context was squarely before Judge Brinkema at the District Court. The U.S. Supreme Court has held that arbitrability questions should be decided by courts, not arbitrators, under these circumstances. *See, e.g.*, *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151, 152 (2024). Judge Brinkema correctly found that the limited arbitration provision in the RCA does not cover the scope of this dispute, which arises solely out of separate stock option agreements. (Point I, *infra*). Judge Brinkema also correctly found that the RCA, including the arbitration provision therein, was unenforceable for a lack of consideration (Point II, *infra*).

In the alternative, in the event this Court determines that an arbitrator should decide arbitrability, Wickett respectfully submits and requests that the District Court action be stayed (rather than dismissed) pending arbitration. Each party requests or has requested a stay. Further, a stay promotes principles of judicial economy. (Point III, *infra*).

## ARGUMENT

## I. JUDGE BRINKEMA CORRECTLY RULED THAT THE RCA ARBITRATION PROVISION DOES NOT COVER THIS DISPUTE.

"[W]here a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024) (*quoting Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010)). "Again, basic principles of contract and consent require that result. Arbitration and delegation agreements are simply contracts, and, normally, if a party says that a contract is invalid, the court must address that argument before deciding the merits of the contract dispute. So too here. 'If a party challenges validity . . . of the precise agreement to arbitrate at issue, the federal court *must* consider the challenge before ordering compliance with [that] arbitration agreement.'" *Id.* (emphasis added).

Indeed, if a plaintiff "specifically challenged the enforceability of the delegation provision, we then must decide whether the delegation provision is unenforceable upon such grounds as exist at law or in equity." *Gibbs v. Haynes Investments, LLC*, 967 F.3d 332, 338 (4th Cir. 2020) (internal quotation marks omitted). Further,"'[i]n specifically challenging a delegation clause, a party may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions. To do so the party must at least reference the delegation provision in its opposition to a motion to compel arbitration.'" *Gibbs*,

967 F. 3d at 338 (*quoting MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226-27 (3d Cir. 2018); *see Johnson v. Continental Finance Company*, LLC, 2025 WL 758026, *3, *5 (4th Cir. March 11, 2025) (the issue of whether a contract lacks consideration is a challenge to a contract's formation, which "necessarily puts the 'making' of any arbitration provision within that contract at issue"; "[i]t would put the cart before the horse to enforce any provision of the agreement, including the delegation clause, before deciding whether the agreement itself was ever formed"; affirming district court's denial of motion to compel arbitration).

Moreover, "where, as here, the parties have agreed to *two* contracts – one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts – a court must decide which contract governs. To hold otherwise would be to impermissibly 'elevate [a delegation provision] over other forms of contract.'" *Coinbase*, 602 U.S. at 152 (*quoting Rent-A-Center,* 561 U.S. at 71 (*quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n.12 (1967)).

Wickett equally challenged the enforceability of the RCA and the arbitration/delegation provision therein (JA17-19 (Complaint ¶¶ 44-48)). Wickett also contended that the 2014 and 2016 Option Agreements, which do not contain arbitration or delegation provisions (and therefore "implicitly" send arbitrability disputes to court), should govern over an arbitration provision in the RCA that does

14

not even remotely cover this dispute (JA19-20 (Complaint ¶ 49)). Wickett specifically relied on above-cited caselaw in her Complaint and opposition brief contending that the Court should decide arbitrability (JA19-20 (Complaint ¶¶ 48-49); JA135-36), and Judge Brinkema correctly agreed. The Company does not even attempt to address *Coinbase* and Wickett's prior arguments thereunder in its appellate brief.[1]

Judge Brinkema also correctly agreed with Wickett that her claims in this action do not "aris[e] under or in connection with this Agreement [the RCA]" (JA72 (RCA § 12(b)); JA164:12-19; JA136). Judge Brinkema correctly recognized that the RCA instead solely imposed restrictions upon Wickett with regard to non-compete provisions and the like (JA164:12-19), but her claims in this action do not relate to those restrictions: "[T]he way I read that document, the scope of the

---

[1] Given that Wickett raised these arguments in the District Court, the Company's reliance on *Modern Perfections, LLC v. Bank of America, N.A.*, 126 F.4th 235 (4th Cir. 2025) is misplaced. In *Modern*, unlike here, the party opposing arbitration failed to raise the issue of who has the primary power to decide whether the party agreed to arbitrate the merits of the underlying dispute (a "third-order dispute") or how the multiple agreement scenario impacts who decides arbitrability (a "fourth-order dispute"), and therefore the Court declined to address those issues. *Modern*, 126 F.4th at 239, 240. Here, Wickett squarely raised these issues before Judge Brinkema (JA19-20 (Complaint ¶¶ 48-49); JA135-36). Similarly, the other cases relied upon by the Company on this point are inapplicable because enforceability was not in issue and/or they did not involve a multi-agreement context. *See, e.g., Simply Wireless, Inc. v. T-Mobile U.S., Inc.*, 877 F.3d 522, 526 (4th Cir. 2017) ("[f]rom the outset, we point out that neither party disputes the validity of the HSN/QVC Agreement, which included the arbitration clause").

arbitration [provision] has to do specifically with the non-compete and that sort of stuff, and it doesn't have anything to do with the stock options. So I'm denying the motion" (JA164:12-19).

Indeed, Wickett's claims relate to the 2014 Options granted to her pursuant to the 2014 Option Agreement and the 2016 Options granted to her under the 2016 Option Agreement, both of which were governed by a separate 2014 Stock Option Plan, as amended, and none of which contain an arbitration provision (*see e.g.*, JA20-21 (Complaint ¶¶ 51-60); JA34 (Complaint Ex. A) and JA36 (Complaint Ex. B)).[2] Further, Wickett's wage and wrongful terminations claim relate to the Company's breach of the 2014 and 2016 Option Agreements, are based on Virginia statutory law, and do not arise under, nor are they connected with, the RCA (JA27-30 (Complaint ¶¶ 88-100)).

Venture Global's reliance on the recital at p. 1 of the RCA referencing options Wickett held as consideration for the RCA fails, as that recital is simply false. Wickett already owned and was already vesting in the only Options she possessed at the time of the RCA, namely the 2014 Options and the 2016 Options, and hence these Options cannot constitute consideration. Indeed, the 2014 and 2016 Option

---

[2] The stock option agreements executed by the parties in 2017 and 2018 (JA56-64, JA7-8 (Complaint ¶ 5) are also separate agreements covering different subject matter and do not contain an arbitration provision, and therefore any claims thereunder are similarly outside the scope of the RCA arbitration provision.

Agreements existed long before the RCA and govern entirely different subject matter.

Similarly, the Company's reliance on a provision in the RCA providing for a forfeiture of options under certain circumstances also fails, as that provision only relates to breaches of the RCA (JA69). Wickett's claims, of course, do not relate to breaches of the RCA; they relate to breaches of the prior and/or separate Stock Option Agreements. Indeed, the mere fact that the RCA references options does not change the fact that the parties did not agree to arbitrate disputes under the Stock Option Agreements. *See, e.g., Evraz Stratcor, Inc. v. Kennametal Inc.*, 2016 WL 11483716, *4-*5 (W.D. Ark. March 8, 2016) (arbitration clause in "Representation Agreement" providing for arbitration for "any controversy or claim arising out of or relating to this Agreement or the breach thereof" did not cover claims under a separate "Conversion Agreement" without an arbitration provision as "they govern different aspects of the parties' relationship"; although one referenced the other, "they do not rely on each other for their essential terms"); *Matter of ITT Avis, Inc. v. Tuttle*, 27 N.Y.2d 571, 573 (1970) (arbitration provision in employment contract did not cover employee's claim that employer breached a stock option agreement by failing to allow him to exercise the options, despite the fact that the employment contract referenced the stock option agreement and they were executed at the same time, when employee's claim arose solely out of the stock option agreement; "[t]o

17

hold otherwise would, in our opinion, lead the parties into arbitration unwittingly through subtlety") (internal quotation marks omitted).

Further, although the Company is correct that there is a liberal federal policy favoring arbitration agreements, "this federal enthusiasm for arbitration agreements is not without bounds. The FAA's liberal policy in favor of arbitration does not imbue arbitration agreements with special powers. Rather, the goal of the FAA was 'to make arbitration agreements as enforceable as other contracts, *but not more so*.'" *Salsbery v. Verizon Wireless (VAW), LLC*, 2014 WL 3876635, *4 (S.D. W.Va. Aug. 7, 2014) (emphasis in original) (*quoting Prima Paint*, 388 U.S. at 404 n.12). "The [Supreme] Court has declared that its holdings 'cannot be divorced from the first principle that underscores all of [its] arbitration decisions: Arbitration is strictly a matter of consent, and thus is a way to resolve those disputes – *but only those disputes* – that the parties have agreed to submit to arbitration.'" *Id.* (*quoting Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 299 (2010)) (emphasis in original). "The [Supreme] Court has never held that the FAA's liberal policy 'overrides the principle that a court may submit to arbitration 'only those disputes…that the parties have agreed to submit.'" (*Id.* (*quoting First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).[3]

---

[3] Venture Global's reliance on *Adkins* and the other cases cited on this point miss the mark. Indeed, *Adkins* provides that arbitration should only be compelled when "a valid arbitration agreement exists and the issues in the case fall within its

Wickett's claims arise out of the subject Stock Option Agreements. The Company could have sought to include an arbitration provision in those agreements but chose not to, demonstrating the parties' intent that disputes thereunder are to be heard in Court.  As none of Wickett's claims "aris[e] under or in connection with this Agreement [the RCA]" (JA72 (RCA §12(b); JA136), her claims in this action do not fall under its arbitration provision. Judge Brinkema's decision should be affirmed for this reason alone.

## II.   **JUDGE BRINKEMA CORRECTLY RULED THAT THE RCA AND ITS ARBITRATION PROVISION ARE UNENFORCEABLE FOR A LACK OF CONSIDERATION.**

### A.   **Legal Standards**.

Whether under the Delaware law cited in the RCA or otherwise, '"[i]t is the blackest of black-letter law that an enforceable contract requires an offer, acceptance and consideration . . .  Consideration is 'a benefit to a promisor or a detriment to a promisee pursuant to the promisor's request'". *Cigna Health and Life Insurance Company v. Audax Health Solutions, Inc.*, 107 A.3d 1082, 1088 (Del. Ch. Ct. 2014) (*quoting James J. Gory Mech. Contracting, Inc. v. BPG Residential P'rs V, LLC*,

---

purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002).  Here, Wickett's claims do not fall within the purview of the arbitration clause in the RCA. Nor does that provision "purport[ ] to cover the dispute" (*id.* at 501) asserted under 2014 and 2016 Option Agreements, which are earlier agreements covering separate subject matter.

2011 WL 6935279, *2 (Del. Ch. Dec. 30, 2011).[4]   In other words, when a party to a contract does not receive a benefit, and the other side does not suffer a detriment at the counter-party's request, the contract and the terms thereof are unenforceable. *See, e.g., Seiden v. Kaneko*, 2015 WL 7289338, *6 (Del. Ch. June 10, 2015) (when "Defendant fails to identify any benefit [plaintiff] would receive" contract lacks consideration) (*citing Sabatoro Const. Co. v. Formoso Plastics Corp. USA*, 1996 WL 453460 at *3 (Del. Super. June 10, 1996); *Cigna Health*, 107 A.3d at 1091 (because the defendants sought to impose a release obligation on Cigna "post-closing, and because nothing new is being provided to Cigna beyond the merger consideration to which it became entitled when the Merger was consummated and its shares were canceled, I find that there is no consideration for the Release Obligation").

### B.    The RCA Is Unenforceable For A Lack Of Consideration.

"[W]hen considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, [the court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise."  *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51,

---

[4] *See, e.g.*, 3 *Williston on Contracts* § 7:5 (4th ed.) (to establish consideration, "a detriment undergone by the promisee or a benefit received by the promisor at the latter's request is necessary"); *Clay v. Chesapeake & Potomac Telephone Co.*, 184 F.2d 995, 996 (D.C. 1950) (consideration is either a benefit moving to the promisor or a detriment to the promisee).

54 (3rd Cir.1980). "In evaluating the Defendants' Motion [to dismiss in favor of arbitration], the court is confine[d] ... to the allegations of the complaint and exhibits thereto, which must be accepted as true for purposes of the motion to dismiss, and all inferences therefrom should be construed in the non-moving party's favor." *Chemours Company v. DowDuPont Inc.*, 2020 WL 1527783, *7 (Del. Ch. March 30, 2020) (internal quotation marks omitted). The Complaint clearly alleges that the RCA lacks consideration (RA17-19 (Complaint ¶¶ 44-47)), and Venture Global's arguments for consideration fail.

First, Venture Global argues that there was consideration because a recital at p. 1 of the RCA (JA66) states that it is "[f]or good and valuable consideration, including the Company stock options granted to Employee as of the Effective Date under the Company's 2014 Stock Option Plan (that are contingent on Employee's execution of this Agreement), the sufficiency of which Employee expressly acknowledges". This argument fails. A boilerplate recital about consideration being provided alone is not sufficient and is overcome or outweighed by "facts suggesting that no such consideration was actually given or suggested". *Moscowitz v. Theory Ent. LLC*, 2020 WL 6304899, *12 (Del Ch. Oct. 28, 2020) and citing <u>Restatement (Second) of Contracts</u> § 87 (1981) cmt. C ("but such a recital may ordinarily be contradicted by evidence that no such consideration was given or expected").

Here, the facts as alleged in the Complaint, which must be taken as true on a

motion to compel arbitration, establish that no such consideration was provided at time the RCA was signed. (JA17-19 (Complaint ¶¶ 44-47)). Indeed, as set forth above, Wickett already owned and was already vesting in the only Options she possessed as of the Effective Date, namely the 2014 Options and the 2016 Options. As a result, these Options cannot constitute consideration (*see, e.g.*, JA17-18 (Complaint ¶ 44)). Hence the stated consideration for the RCA – the Options that had previously been granted to Wickett and were already vesting – was not consideration at all.

Second, the Company argues that the arbitration provision itself constitutes consideration. This argument fails because, by the time of the RCA, Wickett had been working at the Company for three years with the right to pursue her claims in Court, in a public forum, and with the right to a jury trial. It was the Company that suddenly attempted to deprive her of those rights for its own benefit. Being deprived of court process, a public forum, a jury trial, and appellate rights is not a benefit to Wickett nor a detriment to Venture Global, and in any event is not at Wickett's request. It is self-evident that employers seek to impose arbitration provisions to benefit themselves, not their employees. Thus, it is not a detriment to the Company, as it is the Company that wanted and insisted upon it. And even if it could be considered a detriment to the Company, it was certainly not a detriment pursuant to or at Wickett's request, and for this reason as well cannot constitute consideration

under Delaware law. *Cigna Health,* 107 A.3d 1082, 1088 ("[c]onsideration is a benefit to a promisor or a detriment to a promisee pursuant to the promisor's request") (internal quotation marks omitted).[5]

Third, the Company argues that a promise of continued employment was the consideration for the RCA. However, as alleged in the Complaint, Wickett was never promised continued employment or told she would be fired if she did not sign the RCA (JA18 (Complaint ¶ 45)). To the contrary, the RCA expressly states that it does *not* "create any right to continued employment", providing: "Nothing in this Agreement shall create any right to continued employment or in any way supersede, undermine or otherwise modify the at-will status of the employment relationship between the Company and Employee" (JA18 (Complaint ¶ 45); JA72 (RCA § 14)).

Indeed, the Company was free to fire Wickett a split-second after she signed the RCA. For all these reasons, a promise of continued employment cannot possibly

---

[5] Tellingly, none of the cases relied upon by Venture Global on this point relate to a scenario where, like here, an arbitration provision was imposed after the employee had been working with the employer for years, with a right to proceed in a public forum and with a right to a jury trial, with no benefit provided. Rather, they all relate to an arbitration provision being agreed to at the outset of the relationship. *See, e.g., Sapiro v. VeriSign*, 310 F.Supp.2d 208, 211 (D.D.C. 2004) (arbitration provision "condition of employment" at the beginning of the relationship); *Donofrio v. Peninsula Healthcare Servs., LLC*, 2022 WL 1054969, *1 (Del. Super. Ct. April 8, 2022) (consent to arbitration provision condition of admission into long term care facility); *Bryce v. SP Plus Corp.*, 741 F.Supp.3d 385, 389 (E.D. Va. 2024) (arbitration provision in employment offer); *Adkins*, 303 F.3d at 500 (arbitration provision in job application). Hence, these cases are not relevant to the unique facts and circumstances presented here, and are not binding precedent in any event.

be consideration under these circumstances. *Reiver v. Murdoch & Walsh, P.A.*, 625 F. Supp. 998, 1011 (D. Del. 1985) ("[t]here is an inherent difficulty, however, when an employer insists both that he possesses an absolute right of discharge with respect to [an] at-will employee and that his promise of continued employment constitutes consideration for promises obtained from the employee. If the employer retains an absolute right of discharge, the promise of continued employment is illusory and, therefore, cannot serve as consideration for another's promise").

The Company further argues that the fact that Wickett continued to work at the Company after signing the RCA constitutes consideration. This argument fails because under black-letter law there must be consideration at the time of contract for the contract to be enforceable. *Cigna Health*, 107 A.3d at 1088.

None of the cases cited by Venture Global are on point. First of all, none of those cases concerned an agreement, like here, that expressly stated that that there was absolutely no promise of continued employment, and those cases are inapplicable for this reason alone. Further, in those cases, unlike here, the employer either told the employee that if the employee did not sign the agreement the employee could not work for the company, *see Research & Trading Corp. v. Pfuhl*, 1992 WL 345465, *8 (Del. Ch. Ct. Nov. 18, 1992) (offer letter stated employee must sign a non-competition agreement to commence employment), or the employer offered additional monetary consideration, *see Paramount Termite Control Co., Inc.*

*v. Rector*, 238 Va. 171, 176 (1989) (employer offered severance pay in return for signing non-compete), or the case related to a routine term of employment, such as a housing allowance, being minimized, as opposed to relinquishing a fundamental right such as a trial by jury that must be expressly agreed-to, *see Kauffman v. Int'l Bhd. Of Teamsters*, 950 A.2d 44, 48 (D.C. 2008). Hence, these cases are inapposite.

*        *        *

The reality is that the Company *knew* that it had to provide a benefit to Wickett for the RCA and its arbitration provision to be enforceable, as she was a current (at-will) employee and the Company was attempting to take away her rights. That is why the first paragraph of the RCA states that Wickett was receiving Options, and also why the Company offered numerous other employees additional Options in return for executing the RCA (JA 17-18 (Complaint ¶ 44); JA66 (Complaint Ex. H)). However, the Company did not offer additional Options to Wickett, but instead tried to essentially sweep the issue under the rug by citing the consideration it had previously provided to Wickett and pretending it was new consideration, hoping no one would notice. But it is the blackest of black-letter law that a contract and its terms are unenforceable absent consideration. The Company could have provided consideration in numerous ways, but chose to provide Wickett with nothing. Therefore, there is no consideration for the RCA or the arbitration provision therein, and Judge Brinkema's decision should be affirmed for this reason as well.

## III.   IN THE ALTERNATIVE, THE DISRICT COURT ACTION SHOULD BE STAYED PENDING ARBITRATION.

"When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024).  Indeed, Section 3 of the FAA provides that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3.

Further, "staying rather than dismissing a suit comports with the supervisory role that the FAA envisions for the courts", including "enforcing subpoenas issued by arbitrators to compel testimony or produce evidence, *see* § 7; and facilitating recovery on an arbitral award, *see* § 9.  Keeping the suit on the court's docket makes good sense in light of this potential ongoing role, and it avoids and costs and complications that might arise if a party were required to bring a new suit and pay a filing fee to invoke the FAA's procedural protections."  *Smith*, 601 U.S. at 478.

Here, Venture Global requested a stay in the District Court (JA74, 85-87, 89) and Wickett requests a stay in the alternative herein.  Further, had Judge Brinkema compelled arbitration, Wickett would have requested a stay at Oral Argument, but there was no need to do so because the Judge Brinkema correctly denied the motion

to compel.  As the parties have requested a stay, a stay should be granted if this Court disagrees with the District Court on the arbitration issue.  This is especially true here, where an arbitrator may decide, like Judge Brinkema did, that Wickett's claims are not arbitrable, and the claims then end up back in the District Court.  Further, as set forth above, District Court involvement may subsequently be required to provide assistance in the arbitration, such as by compelling compliance with subpoenas or enforcing an award.  Hence, Wickett respectfully submits and requests, in the alternative, that this action be stayed pending arbitration.

## CONCLUSION

Judge Brinkema correctly denied Venture Global's Motion to Compel Arbitration.  This Court should accordingly affirm the District Court's Order. In the alternative, Wickett respectfully requests that the District Court action be stayed pending arbitration.

 Dated:  March 20, 2025

Respectfully submitted,

SULLIVAN & WORCESTER LLP

By: */s/ Gerry Silver*
     Gerry Silver
1251 Avenue of the Americas,
     19th Floor
New York, New York 10020
Telephone:  (212) 660-3096
Facsimile:   (212) 660-3001
gsilver@sullivanlaw.com

Michael T. Dyson
1666 K Street, NW
Washington, D.C. 20006
Telephone: (202) 775-1217
Facsimile: (202) 775-6875
mdyson@sullivanlaw.com

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), that the attached

Brief of Plaintiff-Appellee is proportionately spaced, has a typeface of 14 points or more, and

contains 6,591 words.

*/s/ Gerry Silver*
Gerry Silver