No. 25-1013

# United States Court of Appeals
# for the Fourth Circuit

JESSICA WICKETT,

*Plaintiff-Appellee,*

*v.*

VENTURE GLOBAL LNG, INC., NOW KNOWN AS VENTURE GLOBAL HOLDINGS, INC.

*Defendant-Appellant.*

On Appeal from the United States District Court for the Eastern District of Virginia, No. 1:24-cv-1869 (Brinkema, J.)

**REPLY BRIEF FOR DEFENDANT-APPELLANT**

M. ELAINE HORN
AMY MASON SAHARIA
EMILY RENSHAW PISTILLI
WILLIAMS & CONNOLLY LLP
*680 Maine Avenue, S.W.*
*Washington, DC 20024*
*(202) 434-5000*
*ehorn@wc.com*

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................1

ARGUMENT ..............................................................................................3

I.    WICKETT'S ARGUMENTS ABOUT THE ARBITRATION
AGREEMENT'S SCOPE FAIL BECAUSE THE PARTIES
AGREED THAT AN ARBITRATOR WOULD DECIDE ALL
ARBITRABILITY ISSUES ...............................................................3

      A.    Wickett Does Not Dispute That the Arbitration Agreement
Clearly and Unmistakably Delegates Questions About the
Agreement's Scope to the Arbitrator ..........................................3

      B.    Alternatively, Wickett Misconstrues the Arbitration
Agreement's Broad Scope .........................................................11

II.   WICKETT'S CONSIDERATION CHALLENGE FAILS
BECAUSE THE RECORD SHOWS MULTIPLE SOURCES
OF CONSIDERATION .....................................................................13

III.   WICKETT'S CLAIMS SHOULD BE DISMISSED, NOT
STAYED........................................................................................19

CONCLUSION..........................................................................................20

## TABLE OF AUTHORITIES

Page

### CASES

*Adkins v. Lab. Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002) ...........................11, 16

*Berkeley Cnty. Sch. Dist. v. Hub Int'l. Ltd.*,
  130 F.4th 396 (4th Cir. 2025) ...................................................................10

*Brown v. Coleman Co.*, 220 F.3d 1180 (10th Cir. 2000)...............................12

*Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*,
  252 F.3d 707 (4th Cir. 2001)....................................................................19

*Cloney's Pharmacy, Inc. v. Wellpartner, Inc.*,
  2024 WL 4349291 (S.D.N.Y. Sept. 30, 2024) ............................................8

*Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024)..............................................*passim*

*Coredero v. Solgen Power LLC*,
  2024 WL 5066061 (D. Or. Dec. 11, 2024) ..................................................8

*Evraz Stratcor, Inc. v. Kennametal Inc.*,
  2016 WL 11483716 (W.D. Ark. Mar. 8, 2016) ..........................................12

*In re Axos Bank Litig.*, 2024 WL 4195299 (S.D. Cal. Sept. 13, 2024) .............8

*ITT Avis v. Tuttle*, 261 N.E.2d 395 (N.Y. 1970) ..........................................12

*Johnson v. Circuit City Stores*, 148 F.3d 373 (4th Cir. 1998)..........................16

*Johnson v. Cont'l Fin. Co.*, 131 F.4th 169 (4th Cir. 2025) ..........................14, 16

*Kauffmann v. Int'l Bhd. of Teamsters*, 950 A.2d 44 (D.C. 2008) .............17, 18

*Kim v. Bd. of Educ. of Howard Cnty.*, 93 F.4th 733 (4th Cir. 2024).................5

*Levin v. Alms & Assocs., Inc.*, 634 F.3d 260 (4th Cir. 2011)............................11

*Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974 (4th Cir. 1985).................8

*Meadows v. Cebridge Acquisition, LLC*,
  -- F.4th --, 2025 WL 923762 (4th Cir. 2025) ...........................................15

*Metro. Wash. Airports Auth. v. Pan*, 106 F.4th 355 (4th Cir. 2024).................4

*Modern Perfection, LLC v. Bank of Am., N.A.*,
  126 F.4th 235 (4th Cir. 2025) .............................................................3, 19, 20

*Moscowitz v. Theory Ent. LLC*,
  2020 WL 6304899 (Del. Ch. Oct. 28, 2020) .........................................13, 14, 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)......................................................................................11

ii

Page

Cases—continued:

*NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*,
  745 F.3d 742 (5th Cir. 2014) ............................................................4
*Paramount Termite Control Co. v. Rector*, 380 S.E.2d 922 (Va. 1989) ...........18
*R.K. Chevrolet, Inc. v. Hayden*, 480 S.E.2d 477 (Va. 1997) ..............................13
*Riggs v. Aetna Ins. Co.*, 454 A.2d 818 (D.C.1983) ........................................13
*Sapiro v. VeriSign*, 310 F. Supp. 2d 208 (D.D.C. 2004)....................................16
*Simply Wireless, Inc. v. T-Mobile US, Inc.*,
  877 F.3d 522 (4th Cir. 2017)..............................................................3
*Smith v. Spizzirri*, 601 U.S. 472 (2024) ......................................................19
*Storz, Tr. of I. Shane Storz Tr. v. S. Airways Corp.*,
  2024 WL 3652919 (E.D. Mo. Aug. 5, 2024)........................................8
*Suski v. Coinbase, Inc.*,
  55 F.4th 1227 (9th Cir. 2022), *aff'd*, 602 U.S. 143 (2024)..............................10
*Wash. Inv. Partners of Del., LLC v. Sec. House, K.S.C.C.*,
  28 A.3d 566 (D.C. 2011) ...........................................................13, 17

## INTRODUCTION

Wickett spends much of her brief insisting that her claims do not fall within the arbitration agreement contained in the parties' Restrictive Covenant Agreement (RCA). In doing so, she misses the primary threshold question in this appeal: whether the district court erred when it made its own determination about whether the parties' arbitration agreement covers the present dispute. Before a court can decide that question, it must first evaluate if the parties clearly and unmistakably delegated the task to the arbitrator. Under well-settled authority in this Circuit, the parties unequivocally did so here by expressly incorporating JAMS rules. Thus, any question of the arbitration agreement's coverage must be referred to an arbitrator.

To support her argument that a court must construe the scope of the arbitration agreement, Wickett misreads a recent Supreme Court case, *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024). *Coinbase* held that where multiple contracts conflict on the "question of who decides arbitrability," the court resolves that conflict. *Id.* at 149-50. There are no conflicting contracts here, so *Coinbase* does not apply. And even if there were a conflict that this Court could resolve, construing the relevant documents together shows that the parties intended for the arbitration agreement to control.

Wickett also misconstrues the scope of the parties' arbitration agreement. The agreement broadly covers all disputes arising "under or in connection with" the RCA. JA72. It repeatedly references Wickett's stock options. And it was signed by Wickett and executed on the same day as Wickett's option Award Agreements. Thus, any disputes about those stock options are necessarily disputes arising under or in connection with the RCA.

Finally, Wickett fails to offer any tenable argument that the arbitration agreement was not supported by consideration. Nor could she. The stock options Wickett received when she executed the RCA in 2017, the parties' mutual agreement to submit to binding arbitration, and the fact of Wickett's continued at-will employment after signing the RCA each constitutes sufficient consideration for the arbitration agreement.

Accordingly, the district court erred by denying Venture Global's motion to compel arbitration. This Court should reverse the district court's order with instructions to grant Venture Global's motion to compel arbitration and dismiss all claims.

# ARGUMENT

## I. WICKETT'S ARGUMENTS ABOUT THE ARBITRATION AGREEMENT'S SCOPE FAIL BECAUSE THE PARTIES AGREED THAT AN ARBITRATOR WOULD DECIDE ALL ARBITRABILITY ISSUES

### A. Wickett Does Not Dispute That the Arbitration Agreement Clearly and Unmistakably Delegates Questions About the Agreement's Scope to the Arbitrator

A court "may not decide an arbitrability question that the parties have" clearly and unmistakably "delegated to the arbitrator." *Modern Perfection, LLC v. Bank of Am., N.A.*, 126 F.4th 235, 241 (4th Cir. 2025) (citation omitted). The parties did so here by expressly incorporating JAMS arbitration rules in the RCA's arbitration clause. *See Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 528 (4th Cir. 2017), *abrogated on other grounds by Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019). Therefore, the district court erred by construing the arbitration agreement in the first place. *See* Appellant Br. 14-16.

1. Wickett does not dispute that the arbitration agreement clearly and unmistakably delegates scope disputes to the arbitrator. Instead, citing *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), she argues (at 4) that because more than one contract is relevant to the merits, the Court must also decide

3

whether the parties' dispute falls within the arbitration provision.  Not only was this argument forfeited, it is also wrong.

Wickett did not raise this argument in her opposition to Venture Global's motion to compel arbitration.  In that brief, Wickett cited *Coinbase* only one time, in a footnote.  *See* JA135 n.2.  And even that passing reference did not support the argument she now presents to this Court.  Rather, she cited *Coinbase* (again, in a footnote) in support of her argument that the parties' agreement lacked consideration.  Wickett never contended in her district court brief or at oral argument that the district court needed to assess two separate contracts in order to evaluate the arbitration agreement's scope.  Presumably this was because the alleged "contract" that she now says should be construed as lacking an arbitration provision is a cryptic personal handwritten note to herself from 2016.  *See* JA36-37.

Wickett forfeited this argument.  This Court generally "do[es] not consider issues raised for the first time on appeal."  *Metro. Wash. Airports Auth. v. Pan*, 106 F.4th 355, 361 (4th Cir. 2024) (citation omitted); *see also NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 752 (5th Cir. 2014) (holding the appellee forfeited an argument by failing to raise it before the district court).  And "dropping a few conclusory lines in a footnote does not allow for

4

meaningful review.  In fact, it forfeits the argument."  *Kim v. Bd. of Educ. of Howard Cnty.*, 93 F.4th 733, 747 n.14 (4th Cir. 2024).

In any event, Wickett misreads *Coinbase*.  It is irrelevant here.  *Coinbase* involved two distinct contracts.  602 U.S. at 146.  The first contained an arbitration agreement that, as here, clearly and unmistakably delegated arbitrability disputes to the arbitrator.  *Id.*  The second contract, executed later, contained a forum-selection clause that gave California courts exclusive jurisdiction over the relevant dispute.  *Id.* at 146-47.  Thus, the two contracts were in direct conflict.  On appeal, the Supreme Court considered a narrow question:  whether a court or an arbitrator "should decide whether a subsequent contract supersedes an earlier arbitration agreement that contains a delegation clause."  *Id.* at 147.

The Court's holding was similarly cabined:  where "parties have agreed to *two* contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide what contract governs."  *Id.* at 152.  *Coinbase* presented a conflict between two contracts because the second, later-executed contract contained a forum-selection clause.  *Id.* at 146-47.  The first contract

sent arbitrability disputes to arbitration, while the second "appeared to send disputes to California courts." *Id.* at 147.

No such conflict in forums exists here. Although the parties dispute what documents govern Wickett's stock options, this Court need not resolve that dispute because there is no document in the record besides the RCA's arbitration provision that designates a competing forum, or any forum at all.[1] As Wickett admits (at 10), the RCA is "the only agreement containing an arbitration provision." And no other agreement specifies any other forum either.

According to Wickett (at 1-2), her stock option claims are primarily governed by two "Option Agreement[s]"—the offer letter she received from Venture Global in 2014 referencing 50 stock options, and her personal handwritten note allegedly made in December 2016 after a conversation she had with Venture Global's then-CFO about 50 more stock options. *See* JA34, JA36-37. Neither of these documents contains an arbitration or forum-selection

---

[1] The Venture Global 2014 Stock Option Plan, which Wickett concedes (at 4) governs her options, mandates that every stock option "Award granted pursuant to the Plan shall be evidenced by an Award Agreement." JA115. Wickett contends (at 1-2, 6) that the undated, uncirculated personal handwritten note she created for herself in 2016 after a conversation with her supervisor should be construed as such an "Award Agreement." But even that fanciful construction of the record does not support Wickett's *Coinbase* argument.

clause. Nor does the Venture Global 2014 Stock Option Plan, which Wickett admits (at 4) governs her stock options. *See* JA101-125.

According to Venture Global (at 4), Wickett's options are governed by the Award Agreements she executed the same day as the RCA,[2] as well as the 2014 Stock Option Plan, which each Award Agreement incorporates. *See* JA45-64. Like all other documents besides the RCA, the Award Agreements do not contain arbitration or forum-selection clauses. *See* JA45-73.

Under either side's understanding of the record, the RCA's arbitration clause is the only contractual provision that discusses where to send the parties' disputes, and it clearly and unmistakably delegates arbitrability issues to the arbitrator by expressly incorporating JAMS rules. Because there is no conflict—explicit or implicit—on the "question of who decides arbitrability," *Coinbase* is inapplicable. 602 U.S. at 149.

---

[2] On June 16, 2017, Wickett signed three documents: (1) an Amended and Restated Award Agreement governing the options originally referenced in her 2014 offer letter, (2) a new Award Agreement governing a second allotment of options Wickett received in 2017, and (3) the RCA. *See* JA47, JA57, JA73; Appellant Br. 4-6. Both Award Agreements signed on that date incorporated Venture Global's 2014 Stock Option Plan that was amended and restated in 2017. *See* JA46, JA56.

Wickett insists (at 14) that because the other documents are silent on the question of arbitrability, an implicit conflict exists that requires a court to decide all arbitrability issues. But "silence on an issue spoken to in another document does not render the documents inconsistent." *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 980 n.5 (4th Cir. 1985), *overruled in part on other grounds by Morgan v. Sundance*, 596 U.S. 411 (2022). Thus, in cases involving one contract with an arbitration agreement delegating arbitrability disputes to the arbitrator and another document with no arbitration or forum-selection clause, courts have readily held that *Coinbase* does not apply. *See, e.g.*, *Coredero v. Solgen Power LLC*, 2024 WL 5066061, at *2 (D. Or. Dec. 11, 2024); *Cloney's Pharmacy, Inc. v. Wellpartner, Inc.*, 2024 WL 4349291, at *9-10 (S.D.N.Y. Sept. 30, 2024); *In re Axos Bank Litig.*, 2024 WL 4195299, at *7 (S.D. Cal. Sept. 13, 2024); *Storz, Tr. of I. Shane Storz Tr. v. S. Airways Corp.*, 2024 WL 3652919, at *3-4 (E.D. Mo. Aug. 5, 2024). The same rationale applies here.

2. Moreover, even if Wickett were correct that another document's silence on arbitrability could create an inherent conflict for the Court to re-solve, that conflict should be resolved in favor of arbitration because none of the other documents proffered by Wickett supersede the parties' subsequent

8

agreement to arbitrate in the RCA. As Wickett alleges (at 1), the RCA was executed "long after the stock option agreements that" she contends "form the basis of [her] claims."

Further, the operative Award Agreements, which were executed the same day as the RCA, contain integration clauses providing that any agreement that "(i) expressly references" Venture Global "options generally and (ii) is dated on or after the" Award Agreement's grant date "shall constitute the entire understanding between" the parties "regarding the Option." JA53, JA63. Under those terms, the RCA is unambiguously part of the parties' "entire understanding" regarding Wickett's options. The RCA "expressly references [Wickett's] options," *see* JA66, JA69, and it is "dated on or after" the grant dates in the Award Agreements themselves and the other documents that Wickett identifies, *compare* JA46, JA56, JA34, JA36-37, *with* JA66, JA73. Plus, the 2017 Award Agreement specifically states that Wickett's options were "made contingent on [her] agreement to and execution of the" RCA. JA56; *see also* Appellant Br. 18-19.

The documents thus show that the parties intended for the arbitration agreement to do exactly what it says—apply to "[a]ny dispute or controversy

9

arising under or in connection with" the RCA, including stock option disputes. JA72.

3.     Faced with this inevitable conclusion, Wickett (at 14-15) resorts back to her contention that the RCA "does not even remotely cover this dispute." But that is not an argument about whether the arbitration agreement conflicts with another contractual provision—it is an argument about the agreement's scope. *See Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022) ("The 'scope' of an arbitration clause concerns how widely it applies, not whether it has been superseded by a subsequent agreement."), *aff'd*, 602 U.S. 143 (2024). As this Court recently explained: "whether a dispute arises under the contract is a quintessential scope question," and once a "court is satisfied that the parties formed a contract to delegate to an arbitrator any question about whether a particular claim is subject to their arbitration agreement, the court must enforce that contract." *Berkeley Cnty. Sch. Dist. v. Hub Int'l. Ltd.*, 130 F.4th 396, 404 (4th Cir. 2025) (cleaned up). Because the arbitration agreement here contains a clear and unmistakable delegation clause, scope disputes must be resolved in arbitration.

10

### B. Alternatively, Wickett Misconstrues the Arbitration Agreement's Broad Scope

Even if the Court does not apply the provision delegating scope disputes to the arbitrator, the Court should still instruct the district court to compel arbitration because the agreement covers all of Wickett's claims.

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), especially where, as here, "the arbitration clause is broadly worded," *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 267 (4th Cir. 2011). *See also* Appellant Br. 17-18.

That standard is easily satisfied in this case. Wickett admits (at 16) that her claims are premised on the stock options she received and the contracts governing them. And the RCA explicitly cites those options as "good and valuable consideration" for the RCA, as Wickett "expressly acknowledge[d]." JA66. The RCA also explains that Wickett's options can be forfeited if she breaches the RCA. JA69. Thus, the arbitration agreement, at a minimum, "purports to cover the dispute." *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002); *see also* Appellant Br. 19-20.

Wickett also ignores how the Award Agreements she attached to her complaint are interconnected to the RCA. She signed the RCA the same day

11

she signed both Award Agreements. *Compare* JA47, JA57, *with* JA73. The 2017 Award Agreement's grant date is also the same as the RCA's effective date. *Compare* JA56, *with* JA66. And that Award Agreement makes clear— directly above Wickett's signature—that she "agree[s] to the terms and conditions of the" RCA. JA57. The repeated references in these simultaneously signed documents further show that Wickett's claims "aris[e] under or in connection with" the RCA, JA72.

Wickett's case citations (at 17-18) are unpersuasive. Unlike this case, *Evraz Stratcor, Inc. v. Kennametal Inc.* involved two simultaneously executed contracts, each containing differently worded arbitration agreements. 2016 WL 11483716, at *2 (W.D. Ark. Mar. 8, 2016). Comparing those contracts, the court concluded that the parties intended for the narrower arbitration provision to control. *Id.* at *2-5. In other words, the court resolved the exact type of direct *Coinbase* conflict that is absent here. *Supra* p. 5-7. And in *ITT Avis v. Tuttle*, the court construed an arbitration agreement that only covered disputes "concerning *a* question of fact arising *under* this agreement." 261 N.E.2d 395 (N.Y. 1970) (second emphasis added). Here, the RCA's arbitration agreement is far broader, for it also encompasses disputes arising "in connection with" the RCA. JA72; *see also Brown v. Coleman Co.*, 220 F.3d 1180, 1184

12

(10th Cir. 2000) (explaining this language reflects "the very definition of a broad arbitration clause"); Appellant Br. 18.

Accordingly, the district court erred by concluding that the arbitration agreement does not cover Wickett's claims.

## II. WICKETT'S CONSIDERATION CHALLENGE FAILS BECAUSE THE RECORD SHOWS MULTIPLE SOURCES OF CONSIDERA-TION

Wickett urges this Court to affirm the district court's order on the alternative basis that the RCA containing the arbitration provision lacks consideration.[3] At least three forms of consideration support Wickett's agreement to arbitrate: (1) the stock options Wickett received when she executed the RCA in 2017, (2) the parties' mutual agreement to submit to binding arbitration, and (3) the fact of Wickett's continued at-will employment after

---

[3] Wickett suggests (at 4) that the district court concluded that the RCA "was unenforceable for a lack of consideration." Although the district court opined that the consideration provided in the RCA was "thin," JA164, the relative quantity of consideration did not (and could not) provide the basis for denying the motion to compel arbitration, *see Wash. Inv. Partners of Del., LLC v. Sec. House, K.S.C.C.*, 28 A.3d 566, 574 (D.C. 2011) ("In determining whether a valid contract exists, we 'will not inquire into the adequacy of' consideration, even where it is 'arguably slight,' as long as it is 'legally sufficient.'" (quoting *Riggs v. Aetna Ins. Co.*, 454 A.2d 818, 821 (D.C. 1983))); *accord R.K. Chevrolet, Inc. v. Hayden*, 480 S.E.2d 477, 480 (Va. 1997); *Moscowitz v. Theory Ent. LLC*, 2020 WL 6304899, at *2 (Del. Ch. Oct. 28, 2020). The district court rested its decision on its assessment of the scope of the arbitration provision. JA164.

signing the RCA. Appellant Br. 20-31. Nothing in Wickett's brief demonstrates that any of these three forms of consideration is inadequate.[4]

1.    Wickett first suggests that her express acknowledgment in the RCA that she received stock options as "good and valuable consideration," JA66, should be disregarded in favor of her allegation that, based on her undated personal note describing a purported conversation with another Venture Global employee who had no authority to grant stock option awards, she already "owned" the options and so the agreement lacked consideration. Appellee Br. 21-22 (citing *Moscowitz v. Theory Ent. LLC*, 2020 WL 6304899, at *12 (Del. Ch. Ct. Oct. 28, 2020)). But the only case Wickett relies on holds otherwise.

In *Moscowitz*, the plaintiff likewise alleged that stock options did not serve as consideration for an agreement because he already owned the options

---

[4] Wickett does not dispute (at 19) Venture Global's contention that there is no choice-of-law conflict on the consideration question or that District of Columbia law applies in the event of a conflict. In any event, this Court recently reaffirmed that courts "cannot apply *any* provision of [a] contract, including its choice-of-law clause, before deciding if the parties formed an agreement." *See Johnson v. Cont'l Fin. Co.*, 131 F.4th 169, 178 (4th Cir. 2025). Therefore, District of Columbia law governs the threshold consideration question because the RCA was formed there. *See id.* at 179; Appellant Br. 20-21. That said, Wickett's consideration argument fails under District of Columbia law and any other authority she cites.

14

at the time of execution. *Id.* at *13. The documents incorporated into the plaintiff's complaint, however, stated that he did not own the options until the at-issue agreement had been executed. *Id.* Thus, the plaintiff's allegations could not undermine the "recital in [the] written agreement that a stated consideration has been given." *Id.* at *12.

Here too, the 2017 Award Agreement and the RCA Wickett attached to her complaint indicate that the 2017 options had not been and could not be issued until she signed both agreements. JA56, JA66; *see also* JA115. The RCA further references Wickett's options, the 2017 Award Agreement references the RCA, and both documents share the same signing and effective dates. *Supra* p. 11-12. The recital in the RCA thus "facially supports a finding that the agreement is supported by consideration." *Moscowitz*, 2020 WL 6304899, at *12.

2. Wickett also dismisses the settled principle that "[a] mutual agreement to arbitrate is sufficient consideration to support an arbitration agreement." *Meadows v. Cebridge Acquisition, LLC*, -- F.4th --, 2025 WL 923762, at *5 (4th Cir. 2025) (citing analogous West Virginia law); *see also* Appellant Br. 22-28. In her view, the mutual agreement to arbitrate does not confer consideration because she was working at Venture Global when she

15

signed the RCA and because agreeing to arbitrate is not a benefit to her or a detriment to Venture Global. Appellee Br. 22-23. But Wickett cites no contrary authority. Nor could she. It is a well-settled principle of contract law that mutual promises serve as consideration. *See* Appellant Br. 23. And ample authority holds that, in particular, "[m]utual agreements to arbitrate are *independently sufficient* forms of consideration." *Sapiro v. VeriSign*, 310 F. Supp. 2d 208, 214 (D.D.C. 2004) (emphasis added); *see also, e.g.*, *Adkins*, 303 F.3d at 501 ("[N]o consideration is required above and beyond the agreement to be bound by the arbitration process." (quoting *Johnson v. Circuit City Stores*, 148 F.3d 373, 378 (4th Cir. 1998))) (alteration adopted); Appellant Br. 23-24.

Further, Wickett's present desire to litigate in federal court does not undermine her past agreement to arbitrate. This Court has repeatedly recognized the "many virtues of arbitration," which "often provides parties with a cheaper, faster, and simpler way to resolve their disputes." *Johnson v. Cont'l Fin. Co.*, 131 F.4th 169, 175 (4th Cir. 2025); *see also* JA158 (district court recognizing that Venture Global would pay for all JAMS fees except the filing fee, which was an "advantage" for Wickett). And although courts may assess the formation of an arbitration agreement in the first instance, *Johnson*, 131 F.4th

16

at 175, courts do "not inquire into the adequacy of consideration, even where it is arguably slight, as long as it is legally sufficient," *Wash. Inn Partners of Del., LLC v. Secs. House, K.S.C.C.*, 28 A.3d 566, 574 (D.C. 2011) (internal quotation marks omitted).

3.    Finally, Wickett argues (at 23) that cases holding that a promise of continued employment constitutes consideration are inapposite because Venture Global disclaimed any such promise in the RCA. That argument completely mischaracterizes the nature of the consideration at issue. The consideration is the *fact* of continued employment, not the *promise* of continued employment. Venture Global agrees that it never promised to continue employing Wickett if she signed the RCA. Indeed, Venture Global took care to stress to Wickett that she would remain an at-will employee after she signed the RCA. JA72.

It is precisely because Venture Global "was free to fire Wickett a split-second after she signed the RCA," Appellee Br. 23, that the fact of her continued employment—not a promise of it—confers consideration. By agreeing to the changes in her employment conditions contained in the RCA, Wickett "agree[d] to continue working subject to the new limitation." *Kauffmann v. Int'l Bhd. of Teamsters*, 950 A.2d 44, 47 (D.C. 2008) (citation omitted). And

17

since "neither party to at-will employment is bound to continue performance," Wickett's choice to continue working, and Venture Global's choice to continue employing her, is "valid consideration for the change in terms." *Id.* at 48. The parties' conduct provided the consideration rather than any promises.

Wickett attempts to distinguish *Kauffmann* by arguing, without any supporting authority, that "relinquishing a fundamental right such a trial by jury . . . must be expressly agreed-to." Appellee Br. 25. Even assuming that is true, Wickett *did* expressly waive her jury trial rights by signing the RCA. Not only did Wickett agree to the RCA's arbitration agreement, she also agreed to a conspicuous, all-caps, bilateral jury trial waiver. *See* JA71.[5]

Wickett agreed to the RCA's terms in exchange for stock options and promises including a mutual agreement to arbitrate, and she continued to work at Venture Global after signing the RCA. The RCA and its arbitration agreement are accordingly supported by adequate consideration.

---

[5] Wickett's attempts to distinguish the other cases that Venture Global cited are similarly unavailing. For example, she argues (at 24-25) that *Paramount Termite Control Co. v. Rector*, 380 S.E.2d 922 (Va. 1989), is inapposite because the employer "offered additional monetary consideration" in that case. That is incorrect. The court recognized that in *other cases* the court had held that continued at-will employment plus severance pay conferred sufficient consideration for restrictive covenants, and it extended the principle to cases without severance pay. *See id.* at 926 (citing cases).

## III.  WICKETT'S CLAIMS SHOULD BE DISMISSED, NOT STAYED

Wickett's claims should be dismissed because "all of the issues presented in [this] lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001).  As explained above, this entire case must be submitted to arbitration because the agreement clearly and unmistakably delegates arbitrability to the arbitrators and, alternatively, because the arbitration agreement covers all of Wickett's claims.

*Smith v. Spizzirri*, 601 U.S. 472 (2024), cited by Wickett, does not specify otherwise.  There, the Supreme Court explained that an arbitrable dispute must be stayed "when a federal court finds that a dispute is subject to arbitration, *and a party has requested a stay of the court proceeding pending arbitration.*" *Modern Perfection*, 126 F.4th at 244 (quoting *Smith*, 601 U.S. at 475-76) (alteration adopted).  "*Smith* says nothing about what happens when the appealing party never requests a stay." *Id.*

Neither party requested a stay before the district court.  Venture Global only requested a stay in the *alternative* to dismissal.  *See* JA74, JA89.  And Wickett never requested a stay before the district court at all.  *See* JA126-138.  Instead, she waited until she filed her appellate brief to request a stay (at 26).  While Wickett contends now (at 26) that she "would have requested a stay at

19

Oral Argument" if necessary, that does not make up for her failure to request one in her district court brief. She thus has forfeited the argument, and her claims should be dismissed. *See Modern Perfection*, 126 F.4th at 243-44.

## CONCLUSION

This Court should reverse the district court's order and remand the case with instructions to compel arbitration and dismiss the case.

Respectfully submitted,

/s/ *M. Elaine Horn*
M. ELAINE HORN
AMY MASON SAHARIA
EMILY RENSHAW PISTILLI
WILLIAMS & CONNOLLY LLP
 *680 Maine Avenue, S.W.*
 *Washington, DC 20024*
 *(202) 434-5000*
 *ehorn@wc.com*

*Counsel for Venture Global LNG, Inc.*

20

## **CERTIFICATE OF COMPLIANCE**

I certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B),

that the attached Brief of Defendant-Appellant is proportionately spaced, has

a typeface of 14 points or more, and contains 4,142 words.

/s/ *M. Elaine Horn*

M. ELAINE HORN

## CERTIFICATE OF SERVICE

On this 10th day of April, 2025, I electronically filed the foregoing using the Court's appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by that system.

/s/ *M. Elaine Horn*
M. ELAINE HORN